**Hector CRUZ–CASADO**

v.

**The UNITED STATES.**

**No. 214–75.**

United States Court of Claims.

April 20, 1977.

---

Alan Dranitzke, Washington, D. C., attorney of record, for plaintiff.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This military pay case is before the court on plaintiff's motion and defendant's cross-motion for summary judgment. The material facts are not in dispute. On October 23, 1973, plaintiff was removed from his post as a major[1] in the Regular Army of the United States, with an honorable discharge but with a prohibition against his future reenlistment, pursuant to the recommendation of a board of inquiry as modified and affirmed by a board of review and ultimately by the Secretary of the Army. By suit filed June 24, 1975, plaintiff contests this removal as contrary to Army regulations and therefore invalid, entitling him in this action to back pay and reinstatement. For reasons stated below, we agree with plaintiff and award him the relief requested.

Plaintiff's discharge came about in the following fashion. After service as an Army officer for 12 years, during which time he rose from second lieutenant to major, plaintiff was charged by a removal selection board in November 1972 with acts of personal misconduct and conduct unbecoming an officer in that he made homosexual advances to two enlisted men, one to PV2 Edwin Eugene Hagan at Fort Leonard Wood (Missouri) on April 16, 1972, and the other to SP5 James Lee Felty in Vietnam on May 9, 1967. The effect of these charges was to bring plaintiff before a board of inquiry (hereinafter the board) on February 27, 1973, to show cause why he should be retained as an Army officer. The proceedings before the board were not

---

1. This was his temporary grade. His permanent rank at the time was that of captain.

criminal in nature, but rather amounted to an administrative "elimination" action under 10 U.S.C. § 3791 (1970) and Army regulation (AR) 635–100 (1970), in which the Government, pursuant to paragraph 5–32 of the regulation, bore the burden of proving plaintiff unfit for retention by a preponderance of the evidence.

At the hearing before the board, the Government introduced affidavits relating to both the Felty and Hagan incidents, though live testimony was presented only on the latter. The Government's affidavits and testimony on the Hagan incident were to the effect that plaintiff approached Hagan outside an eating club at Fort Leonard Wood and made a homosexual proposal to him. Hagan supposedly started to leave the base with plaintiff in the latter's car, described by Hagan as a white Volvo, but when plaintiff became lost trying to find the exit from the base, Hagan directed him toward the base movie theater. Hagan then fled from the car, notified the military police of the alleged solicitation, and in addition related the incident of two companions of his, Private James Doenhoefer and Private Robert McKitrick. The affidavits and testimony of Hagan, Doenhoefer, and McKitrick did not agree on whether Hagan told his companions that the party who solicited him was carrying a gun, or only that Hagan thought he might have had a gun. Hagan's affidavit stated, in response to questions, that Hagan did not know why he stepped into the soliciting party's car, or why he told others about the gun. Doenhoefer's affidavit related that the license number of the car plaintiff allegedly drove was G5Y 663, which he recorded when he and his companions, and supposedly plaintiff, saw the car, shortly after the solicitation and just before the car left the base. Hagan alone identified plaintiff as the one who made the solicitation.

Plaintiff's case consisted of his testimony denying the Hagan charge, affidavits and testimony attesting to plaintiff's good character and efficiency as an officer, his record of decorations, a number of highly comple-

mentary officer effectiveness reports, and a stipulation of expected testimony from the manager of a local car rental agency stating that on the date of the Hagan incident plaintiff had rented from his agency a white Subaru[2] bearing Missouri license number GX 6035. The board took this evidence under advisement, and made its determinations. Like a board of inquiry which convened in 1970 to pass on the Felty incident, the board in 1973 found that the 1967 charge was "unsubstantiated." However, it found that plaintiff had made a homosexual solicitation to Hagan, and on this basis ordered plaintiff removed from the Army with a less than honorable discharge. A board of review approved the board's action on May 16, 1973, with the modifications that plaintiff's discharge be honorable but that he not be permitted to reenlist. The Secretary of the Army affirmed this recommendation on September 26, 1973, and plaintiff was discharged in the following month.

About one week before his discharge became effective, plaintiff applied to the Army Board for the Correction of Military Records (ABCMR) to have the impending separation voided, citing plaintiff's record of decorations and several commendatory effectiveness reports either unavailable during, or issued subsequent to, the hearing before the board. In January and February of 1974, plaintiff underwent psychiatric and psychological examination at a Veterans Administration clinic in San Antonio, Texas, resulting in statements from one psychiatrist and two psychologists that plaintiff showed no signs of a "sexual pathology," that he possessed "a healthy identification with the male role," and that his disavowal of homosexual acts and tendencies was supported by the tests. In late February the ABCMR denied plaintiff's request for a hearing and refused to alter his records. Thereafter, in March, plaintiff took a polygraph examination, the results of which concurred with his denial that he was a homosexual or committed homosexual acts. A supplemental application filed

---

**2.** The agency did not rent Volvos, according to the stipulation.

with the ABCMR the next month recited the polygraph results, appended statements by a number of officers attesting to plaintiff's good character and exemplary service as an officer, and called attention to the then newly discovered fact that Hagan had a record as a juvenile delinquent, having been charged in 1971 with grand larceny and breaking and entering.[3] The supplement did not mention the psychiatric and psychological testing. In June, the ABCMR again denied plaintiff's requested hearing and relief. This suit followed.

■ Plaintiff contends that a variety of defects in the board proceeding, and the arbitrariness and capriciousness of the ABCMR's refusal to grant plaintiff a hearing and correct his records, require the invalidation of his discharge and his reinstatement in the Army, with appropriate back pay and correction of records. As defects he cites a failure to specify in the board's convening orders the incidents to be investigated, consideration of the Felty incident as improperly placing him twice in jeopardy, failure to conduct a psychiatric examination regarding his alleged homosexuality, overreaching by the board's legal adviser, denial of plaintiff's right to confront and cross-examine his accuser, application of the wrong standard of burden of proof, and various other errors, all in violation of Army regulations and due process. It is elementary that an agency must follow its own regulations, and that a discharge brought about in violation of those regulations is invalid and cannot stand. *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Bray v. United States,* 515 F.2d 1383, 207 Ct.Cl. 60 (1975). Further, the violation of a single regulation is sufficient to void the separation action, so long as it is substantial and prejudicial. *Pascal v. United States,* 543 F.2d 1284, 211 Ct.Cl. —— (1976); *Rasmussen v. United States,* 543 F.2d 134, 211 Ct.Cl. —— (1976); *Henderson v. United States,* 175 Ct.Cl. 690 (1966), *cert. denied,* 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967).

■ AR 635–100, paragraph 5–8, prescribes that, in the case of an officer being considered for administrative separation, "[w]hen it is considered that the officer's mental condition has contributed to his military inefficiency or unsuitability as specified," he will be medically examined, such evaluation to "include a psychiatric study of the individual, when appropriate." Paragraph 5–9a specifies that for officers being considered for separation under paragraph 5–12a (7) with "[c]ommission or attempted commission of a homosexual act," or under paragraph 5–12a (8) with "[e]xistence of homosexual tendencies," the medical evaluation "including the psychiatric study of the individual will include the following: * * (2) Opinion regarding the existence of homosexuality." Paragraph 1–3x defines a homosexual act to cover "any proposal, solicitation, or attempt to perform such an act." Though plaintiff was examined by a psychiatrist to ascertain his capacity to comprehend and participate in the proceedings against him, and his ability to distinguish right from wrong and adhere to the right, no opinion was given by the examiner regarding plaintiff's alleged homosexuality. It is true that plaintiff was technically charged by the removal selection board with personal misconduct and conduct unbecoming an officer, under paragraph 5–12 a (6) and (10), respectively, rather than with homosexual acts or tendencies under paragraph 5–12a (7) and (8). However, it is abundantly clear from the specifications and the record before the board that the gravamen of the Government's complaint against him was his supposed homosexual conduct and nothing else. It would elevate form over substance to follow the reasoning urged by the Government, that the necessity for the psychiatric opinion on homosexuality never comes into play unless the charges against an officer specifically single out paragraph 5–12a (7) and (8) as their basis. We decline to endorse such a theory, but rather hold that defendant violated the explicit procedures set down in paragraphs

---

**3.** An Army report dated April 1972 recorded these charges. There is no indication that any-

one involved in the board proceeding on the Government's behalf knew of these charges.

5-8 and 5-9a when it failed to secure a psychiatric opinion on plaintiff's alleged homosexuality prior to its judgment to terminate his service. The alleged "misconduct" and "conduct unbecoming" charges are subsumed in the alleged homosexual conduct.

Paragraph 5-15a of AR 635-100 instructs that a commanding officer hearing of allegations that one of his subordinates has engaged in homosexual conduct "will inquire thoroughly and comprehensively into the matter * * *, bearing in mind the peculiar susceptibility of such cases to possible malicious charges." Paragraph 5-15b goes on to provide that among the facts collected concerning the charges will be "(3) [medical evaluation reports as specified in paragraph 5-9." If there could be any doubt regarding the regulation's requirement that the professional opinion be obtained, this provision should put the matter to rest. That the language of paragraph 5-15 mandates the opinion in a case like plaintiff's, where charges have not been placed under paragraph 5-12a (7) and (8), is evident from the fact that it speaks to a situation where only allegations of homosexuality are involved, quite apart and prior in time from the bringing of formal charges. Defendant's omission in not securing the psychiatric opinion is equally a violation of paragraph 5-15.

It is obvious that defendant's failure substantially and prejudicially abridged plaintiff's procedural rights. Subsequent psychiatric and psychological testing resulted in firm denials by three professionals employed by the Veterans Administration that plaintiff possessed any homosexual traits or identification. To the contrary, their examinations of plaintiff revealed that he adhered unwaveringly to socially accepted sexual norms. An opinion to this effect, placed before the board before plaintiff's discharge, no doubt would have given the board pause. This much the Government owed plaintiff, under its own regulations. We think that the board, acting in good faith, was apparently and justifiably concerned with the existence of multiple charges of homosexuality against plaintiff.

In such circumstances, the professional opinion required by the regulations was all the more needed to prevent improper disposition of the case.

█ In view of the Government's failure to follow its own published regulations, in a manner that substantially and adversely affected plaintiff's rights, the discharge cannot stand. Since the Correction Board improperly failed to correct the error we will do so. Plaintiff must be presumed to have continued in the Army during the intervening years, must be paid accordingly, *Bray v. United States, supra,* and again must be placed on the active duty list. In view of the holding we have made based on a single but substantial and prejudicial legal error, we find it unnecessary to address plaintiff's other contentions. It is, therefore, concluded that plaintiff is entitled to recover back pay and allowances as provided by law, less appropriate offsets to be determined in a further proceeding pursuant to Rule 131(c). It is ordered pursuant to 86 Stat. 652, 28 U.S.C. § 1491 (Supp. III, 1973), that the Secretary of the Army reinstate plaintiff and that his records be corrected to remove all adverse references pertaining to the 1972–73 proceedings and discharge. Plaintiff's motion for summary judgment is granted. Defendant's cross-motion for summary judgment is denied.