### Dominic M. CRISPINO, Jr.

v.

### The UNITED STATES.

### No. 321–82C.

United States Claims Court.

Aug. 22, 1983.

Linda J. Ravdin, Washington, D.C., for plaintiff.

Kathleen A. Flynn, Washington, D.C., for defendant. Asst. Atty. Gen. J. Paul McGrath and Lt. Commander Thomas P. Tielens, Dept. of the Navy, Washington, D.C., of counsel.

### OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

Dominic M. Crispino, Jr., the plaintiff in this military pay case, is an enlisted member of the United States Navy. Before October 1977, he was a petty officer second class (pay grade E–5). In October 1977, the Navy, pursuant to the recommendation of a Petty Officer Quality Control Review Board ("the Review Board"), reduced the plaintiff in rate to a petty officer third class (pay grade E–4). The reduction was based on

adverse evaluations of the plaintiff's performance.

The plaintiff seeks in the present action to have the reduction in rate set aside and to receive the benefits which he was denied as a result of the reduction. The plaintiff also seeks a promotion in rate to petty officer first class.

The case is before the court on the defendant's motion and the plaintiff's cross-motion for summary judgment. Together, the pending motions provide an appropriate vehicle for the disposition of the case, as the parties are in agreement on the pertinent facts. For the reasons stated in the opinion, it is concluded that the plaintiff is not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

*Background Information*

The plaintiff enlisted in the United States Navy Reserves in November 1967, and began active service in the Regular Navy in March 1968. Since the date of his first enlistment, the plaintiff has continued to serve, with only a slight interruption, in either the Navy Reserves or the Regular Navy. In April 1973, he was promoted to petty officer second class and advanced in pay grade to E–5.

Beginning May 1, 1973, the plaintiff received periodic evaluations of his performance as an E–5. The Enlisted Performance Evaluation System, which is provided for by Article 3410150 of the Bureau of Naval Personnel Manual (BUPERSMAN), is designed to evaluate enlisted personnel in various traits. Making the evaluation is the responsibility of each enlisted member's commanding officer or officer in charge. Each evaluation is supposed to be based on a specific period of time, and is reviewed through the chain of command. A member's commanding officer is responsible for ensuring that each final evaluation is a true evaluation of the member.

The plaintiff's evaluation reports for the periods ending December 31, 1973, December 31, 1975, December 31, 1976, and March 31, 1977, contained adverse marks (GOL,

Good or Lower), as defined by BUPERSMAN article 3410150.12. The comments in these evaluations were also adverse. Generally, the plaintiff was cited for his poor relations with both his superior petty officers and his subordinates, and for his negative attitude toward following orders and improving his performance. For example, the evaluation for the period ending December 31, 1975, contained the following remarks by Lt. R.E. Rankin:

MS2 CRISPINO'S PERFORMANCE AS A MESS SPECIALIST HAS DEFINITELY NOT BEEN IN KEEPING WITH HIS ABILITIES. HIS RARE DEMONSTRATIONS OF SOUND PROFESSIONAL KNOWLEDGE AND INDUSTRIOUSNESS SERVE ONLY TO POINT UP THE FACT THAT HE SPENDS THE MAJORITY OF HIS TIME UNDERACHIEVING. MS2 CRISPINO'S PROBLEMS STEM FROM POOR RELATIONSHIPS WITH HIS LEADING PETTY OFFICERS, HIS PEERS, AND THE ITALIAN CIVILIANS WORKING AS COOKS AND MESS ATTENDANTS. HIS NEGATIVE MANNER IN RESPONDING TO AND GIVING ORDERS AND SUGGESTIONS SERVES TO ALIENATE OTHERS RATHER THAN PROMOTE A SPIRIT OF COOPERATION AND COMMON ENDEAVOR. MS2 CRISPINO HAS SHOWN EXCELLENT POTENTIAL FOR ADVANCEMENT IN TERMS OF KNOWLEDGE AND ABILITY. HE NEEDS TO DEMONSTRATE MUCH MORE CONSISTENCY AND RELIABILITY IN HIS DAILY WORK OUTPUT. MS2 CRISPINO POSSESSES A GOOD COMMAND OF THE ENGLISH LANGUAGE, BOTH ORAL AND WRITTEN.

The plaintiff signed statements acknowledging the adverse marks for the periods ending December 31, 1975, and December 31, 1976. He also signed an acknowledgement for the report which covered the period ending March 31, 1977. The plaintiff, therefore, was aware of the adverse marks and comments, except possibility for those

contained in the December 31, 1973, report. Moreover, on September 7, 1976, the plaintiff signed a statement acknowledging that he was counseled concerning his unsatisfactory performance and the remedial action required on his part, and that he was informed that he could not reenlist without the prior approval of the Chief of Naval Personnel.

In June 1977, the plaintiff was removed from his duties as a result of his unsatisfactory performance, and his military records were forwarded to the Review Board for its consideration. The Review Board determined, based upon a review of the plaintiff's unfavorable evaluation reports, that the plaintiff was not performing at the minimum level necessary to fulfill his responsibilities as a petty officer second class. The Review Board therefore recommended that the plaintiff be reduced in rate to petty officer third class. The reduction was held in abeyance while the plaintiff was afforded an opportunity to submit a rebuttal statement.

The plaintiff submitted a rebuttal statement, in which he claimed that his problems were the result of a personality conflict with his superiors, and that he was the victim of unequal treatment. The plaintiff stated that he had information, including statements from other military personnel, supporting his claims, and that he would present the information at a hearing. The regulation applicable to the plaintiff's reduction in rate, BUPERSMAN article 3410180, does not provide, however for a hearing.

Following the submission of the plaintiff's rebuttal, the Chief of Naval Personnel accepted the Review Board's recommendation and ordered the plaintiff reduced to petty officer third class (pay grade E–4). The reduction became effective October 25, 1977. The plaintiff has not been advanced since his reduction in rate.

In December 1977, the plaintiff applied to the Board for Correction of Naval Records ("the Correction Board") requesting removal of the six performance evaluations for the periods from May 1, 1973, to March 31, 1977. The plaintiff also requested reinstatement to the rate of petty officer second class, and promotion to the rate which he would have obtained but for the reduction to petty officer third class.

In February 1978, the Navy Professional Standards Branch, responding to a request from the Correction Board, stated that the plaintiff's performance evaluation reports were in accordance with the applicable regulations, and recommended that the plaintiff's application for a correction of records and for reinstatement in the rate of petty officer second class be denied. The Correction Board furnished a copy of the Professional Standards Branch's opinion and recommendation to the plaintiff, and requested the plaintiff to respond within 30 days. The plaintiff replied in April 1978 that he had no additional materials except for the information which he would present at a hearing.

On September 19, 1978, the Correction Board informed the plaintiff that it lacked authority to order the Review Board to conduct a hearing in the plaintiff's case, and that a hearing before the Correction Board was not a matter of right. The Correction Board stated that it would grant a hearing only if it determined that there had been some "error or injustice" and that a hearing "would serve a useful purpose." The Correction Board therefore recommended that the plaintiff forward, within 90 days, any additional evidence for the Correction Board's consideration.

The plaintiff did not respond to the Correction Board's letter until October 22, 1979, when he submitted additional materials to that board.

The Correction Board issued its final decision on September 23, 1980. The Board concluded that a determination could be made on the basis of evidence in the record, without a hearing. On the basis of an advisory opinion obtained from the Military Personnel Evaluation Division, the Board concluded that the only corrective action warranted in the plaintiff's case was the removal of the evaluation report for the period ending December 31, 1973. The Cor-

rection Board recommended removal of the particular adverse report on the ground that the plaintiff possibly was not afforded an opportunity to comment on it.

The Correction Board concurred in the opinion of the Chief of Naval Personnel that "although it is not possible to determine the basis of the Petty Officer Quality Control Review Board's decision to reduce Petitioner in rate, it is probable that the removal of the evaluation ending 31 December 1973 would not have affected that decision." The Correction Board referred to the fact that the plaintiff was not reduced in rate until October 25, 1977, nearly 4 years after the period covered by the excised report. As a result, the Correction Board concluded that the plaintiff's application should be denied, except for the removal of the report for the period ending December 31, 1973.

On September 26, 1980, the Secretary of the Navy approved the Correction Board's recommendation.

The plaintiff filed his complaint (previously denominated a petition) in this court's predecessor, the United States Court of Claims, on July 2, 1982.

### Laches

The defendant contends at the outset that the plaintiff's claim is barred by the equitable doctrine of laches. In *Brundage v. United States,* 205 Ct.Cl. 502, 505–06, 504 F.2d 1382, 1384 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975), the Court of Claims explained the doctrine of laches as follows:

Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations.

■ As the court stated in *Brundage,* the two essential elements of laches, which the party asserting the defense has the burden of establishing, are (1) unreasonable and inexcusable delay in filing the claim, and (2) resulting prejudice to the defendant.

■ It is well settled now that laches applies in military pay cases (*e.g., Cason v. United States,* 200 Ct.Cl. 424, 431, 471 F.2d 1225, 1229 (1973); *Eurell v. United States,* 215 Ct.Cl. 273, 279, 566 F.2d 1146, 1150 (1977); *Devine v. United States,* 208 Ct.Cl. 998, 999, 529 F.2d 532 (1975)), as well as in claims for civilian pay (*e.g., Grisham v. United States,* 183 Ct.Cl. 657, 662, 392 F.2d 980, 983, *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968); *Gersten v. United States,* 176 Ct.Cl. 633, 635, 364 F.2d 850, 851 (1966)).

■ In the present case, the plaintiff's claim accrued in October 1977, when he was reduced in rate; and he filed his action in the Court of Claims approximately 4 years and 8 months later, on July 2, 1982. A large part of the more than 4-year interval between the accrual of the claim and the filing of this action was consumed by the plaintiff's pursuit of administrative relief through the use of permissive procedures. The Court of Claims stated that laches should not be applied in a way that discourages or penalizes "reasonably prompt, good faith pursuit of permissive administrative remedies for relief," such as applications to the boards established by the military services for the correction of military records. *Steuer v. United States,* 207 Ct.Cl. 282, 295 (1975); *see also Eurell v. United States, supra,* 215 Ct.Cl. at 279–80, 566 F.2d at 1150; *Cason v. United States, supra,* 200 Ct.Cl. at 432, 471 F.2d at 1229. The plaintiff applied to the Correction Board in December 1977, 2 months after he was reduced in rate, and submitted numerous exhibits in support of his application. Although he was responsible for some delay, including a

delay of more than a year in responding to one request from the Correction Board, the plaintiff was reasonably diligent in seeking administrative relief.

After the exhaustion of his administrative remedies, however, which occurred when the Correction Board issued its decision on September 23, 1981, the plaintiff waited 21 months before filing his action in the Court of Claims. The plaintiff has not offered any excuse or reason for this delay. In *Frommhagen v. United States,* 216 Ct.Cl. 1, 5, 573 F.2d 52, 55 (1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979), the Court of Claims stated:

> * * * While generally it is convenient to measure times for laches purposes in pay cases from exhaustion of administrative remedies to commencement of suit, evidently, if the laches rule is to serve any real purpose, and not be just another statute of limitations, judge made, we must at least consider time from the start of the controversy to the prospective date of judgment, not as a laches period itself, but in evaluating the reasonableness or excessiveness of that period. * * *

Particularly in light of the time that had already lapsed during the administrative appeal, the plaintiff's subsequent delay of 21 months in filing the action must be considered unreasonable.

The Court of Claims stated on many occasions that the mere passage of time is not sufficient to bar a claim on the ground of laches. *E.g., Ellersick v. United States,* 221 Ct.Cl. 861, 862, 618 F.2d 123 (1979); *Neumann v. United States,* 219 Ct.Cl. 591, 592, 618 F.2d 119 (1979); *Eurell v. United States, supra,* 215 Ct.Cl. at 280, 566 F.2d at 1150. The Government must also show that it has been prejudiced by the unreasonable delay. In this case, the defendant asks the court to presume prejudice. The rule is that "the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice." *Cason v. United States, supra,* 200 Ct.Cl. at 431, 471 F.2d at 1229; *accord, Deering v. United States,* 223 Ct.Cl. 342, 350, 620 F.2d 242, 246

(1980); *Steuer v. United States, supra,* 207 Ct.Cl. at 297; *Brundage v. United States, supra,* 205 Ct.Cl. at 509, 504 F.2d at 1386. However, a presumption of prejudice is not warranted in the plaintiff's case. Moreover, it is unnecessary to consider how much proof of specific prejudice would be sufficient in this case because the defendant has made no showing of prejudice.

Typically, in pay cases against the Government, prejudice can be presumed to have resulted from extreme delay, because the claimant has previously been released and, presumably, he or she has been replaced by another employee. Thus, the defendant would be prejudiced by having to pay, for a long period, two salaries for one position. In this case, however, the plaintiff has, with only a brief interruption, remained in the Navy since his reduction in rate, although he has been paid at a lower rate. In such a case, any prejudice to the Government is not great. *Cf. Carrasco v. United States,* 215 Ct.Cl. 19, 29–30 (1977), *modified on other grounds,* 215 Ct.Cl. 1044 (1978).

The defendant argues that prejudice should be presumed because relevant documents probably have been destroyed and witnesses may be unavailable or their memories may have faded. It is true, of course, that "[t]he search for truth is always imperiled with the passage of time," because "[m]emories fade and documentary evidence is sometimes lost or destroyed." *Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1387. Here, however, both parties have appended numerous exhibits to their briefs and neither has represented that any material documents are actually missing. Similarly, the defendant's assertion regarding witnesses is pure speculation.

Finally, the defendant is not entitled to a presumption of prejudice because the length of the plaintiff's unreasonable delay was not sufficiently extreme. Generally, as indicated by the cases that the defendant cites, the presumption is appropriate when the unexcused delay is considerably longer than in the plaintiff's case. *E.g., Deering v.*

*United States, supra,* 223 Ct.Cl. at 345, 620 F.2d at 243 (suit filed on last day of 6-year statute of limitations period); *Steuer v. United States, supra,* 207 Ct.Cl. at 294 (suit filed 2 days short of expiration of statute of limitations period and nearly 5 years after application to correction board denied); *Gersten v. United States, supra,* 176 Ct.Cl. at 635, 364 F.2d at 851 (suit filed 5 years and 5 months after discharge and exhaustion of administrative remedies). This is not "one of those flagrant cases." *Cf. Devine v. United States, supra,* 208 Ct.Cl. at 1000.

In short, on the facts of this case, although the plaintiff unreasonably delayed the filing of his action, a presumption of prejudice is not appropriate, and the defendant has not made any showing of specific prejudice. The defense of laches, therefore, does not apply.

### Due Process

Pursuant to 10 U.S.C. § 1552(a) (Supp V 1981), the Secretary of a military department, "acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice."

█ It is well settled that this court has jurisdiction to consider claims that the Secretary or a correction board has improperly failed to correct an alleged error or injustice. *Sanders v. United States,* 219 Ct.Cl. 285, 300, 594 F.2d 804, 812–13 (1979); *Armstrong v. United States,* 205 Ct.Cl. 754, 761 (1974); *Hertzog v. United States,* 167 Ct.Cl. 377, 383–84 (1964). The scope of review in such cases, however, is narrow.

The decision of a Secretary or correction board is final and conclusive unless it is arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation. *Sanders v. United States, supra,* 219 Ct.Cl. at 298, 594 F.2d at 811; *Skinner v. United States,* 219 Ct.Cl. 322, 333, 594 F.2d 824, 830 (1979); *Cooper v. United States,* 203 Ct.Cl. 300, 304–05 (1973). Moreover, an error or injus-

tice is reversible only if it is substantial and prejudicial to the plaintiff. *Sanders v. United States, supra,* 219 Ct.Cl. at 298, 594 F.2d at 811; *Skinner v. United States, supra,* 219 Ct.Cl. at 329, 333, 594 F.2d at 828, 830; *Cruz-Casado v. United States,* 213 Ct.Cl. 498, 503, 553 F.2d 672, 675 (1977).

█ Generally, the decisions of the service boards will not be overturned unless a board was illegally constituted or has had improper materials presented to it or has violated applicable statutes or regulations. *Savio v. United States,* 213 Ct.Cl. 737, 740, 553 F.2d 105 (1977). A rebuttable presumption of regularity, correctness, and good faith attaches to administrative actions, including the actions of military administrators. *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813; *Brooks v. United States,* 213 Ct.Cl. 115, 121 (1977); *Boyd v. United States,* 207 Ct.Cl. 1, 9 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Brenner v. United States,* 202 Ct.Cl. 678, 692 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974). The burden on the plaintiff is a heavy one. *Skinner v. United States, supra,* 219 Ct.Cl. at 332, 594 F.2d at 830; *Meyer v. United States,* 212 Ct.Cl. 537, 538, 546 F.2d 431, *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 73 (1977); *Cooper v. United States, supra,* 203 Ct.Cl. at 304.

The Court of Claims stated often that in the administration of their internal affairs and personnel matters, the military departments must be allowed wide discretion, and the court must not substitute its judgment for that of the correction boards. *Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813; *Tanaka v. United States,* 210 Ct.Cl. 712, 713, 538 F.2d 348 (1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977).

The plaintiff contends that his reduction in rate did not comply with the applicable regulation, BUPERSMAN 3410150, which requires that a service member be given an opportunity to comment on performance evaluations. The Correction Board concluded that, with respect to the evaluation for

the period ending December 31, 1973, there was a possibility that the plaintiff was not afforded an opportunity to comment. The board therefore recommended removal of the evaluation from the plaintiff's record, and this was done.

The plaintiff argues that the board also should have removed, but failed to do so, the adverse evaluation for the period ending December 31, 1975, because, according to the plaintiff, there is no indication in the record that he was given an opportunity to respond to that adverse evaluation. However, in the case of the 1975 evaluation, the plaintiff signed a statement acknowledging the adverse marks. The regulations do not require that a member be informed *in writing* of the opportunity to comment. It must be presumed that the government officials acted lawfully, correctly, and in good faith, and, therefore, that they informed the plaintiff of his right to comment on the adverse evaluations, including the 1975 evaluation. The plaintiff has not offered any affidavits or other supporting materials to overcome the presumption. In fact, the plaintiff does not allege specifically that the military authorities failed to give him an opportunity to comment on the 1975 evaluation.

■ The Correction Board concluded that the removal of the adverse evaluation report for the period ending December 31, 1973, probably would not have affected the decision to reduce the plaintiff in rate. This conclusion is supported by substantial evidence. The 1973 report covered a period occurring nearly 4 years before the plaintiff's reduction in rate on October 25, 1977, and the 1973 report was followed by several other unfavorable evaluation reports. Under these circumstances, the presence of the 1973 report in the plaintiff's service record when the Review Board considered his case must be considered the kind of harmless error that does not justify voiding the action of a service board. *Cf. Sanders v. United States, supra,* 219 Ct.Cl. at 310, 594 F.2d at 818.

Similarly, the plaintiff's allegation that a single rebuttal statement, for the evalua-

tion period ending December 31, 1976, was missing from the record seen by the Review Board does not compel the granting of judicial relief. Assuming the truthfulness of the allegation for the purpose of summary judgment only, the plaintiff's service record was substantially complete when it was considered by the Review Board. *Cf. Sanders v. United States, supra,* 219 Ct.Cl. at 302, 594 F.2d at 814.

■ The plaintiff also contends that the failure to grant him a hearing before the Review Board made its decision a violation of due process. It is well settled, however, that a service member's rights in matters related to pay, allowance, promotion, and demotion are grounded solely on statutes and regulations. *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *Sanders v. United States, supra,* 219 Ct.Cl. at 295 n. 9, 594 F.2d at 809 n. 9; *Keef v. United States,* 185 Ct.Cl. 454, 471 (1968); *Norman v. United States,* 183 Ct.Cl. 41, 49, 392 F.2d 255, 259–60 (1968), *cert. denied,* 393 U.S. 1018, 89 S.Ct. 622, 21 L.Ed.2d 562 (1969).

In his complaint, the plaintiff alleged that the Navy failed to comply with the procedural requirements set out in BUPERSMAN article 3420140, which provides for reductions in rate by members' commanding officers. The plaintiff's reduction, however, was governed by BUPERSMAN article 3410180, which provides for recommendations for reductions in rate by the Review Board. Article 3410180 further provides that the Review Board shall review the performance records of petty officers, but does not require a hearing.

The plaintiff's claim that the Review Board lacked any criteria to make its recommendation is also without merit. Article 3410180 establishes general categories which the Review Board is supposed to review and evaluate in making its recommendations. As stated earlier in the opinion, the military services necessarily have wide discretion in administering their personnel matters. The Review Board is designed "to assist in the development and maintenance of a highly professional enlisted career

force" (BUPERSMAN article 3410180), and the broad criteria it uses in making its recommendations are certainly reasonably related to achieving that purpose.

■ As the plaintiff's reduction in rate complied with the applicable regulations and does not violate "minimum concepts of basic fairness" (*cf. Waller v. United States,* 198 Ct.Cl. 908, 913, 461 F.2d 1273, 1276 (1972); *see also Birt v. United States,* 180 Ct.Cl. 910, 913 (1967)), the plaintiff's due process claim must fail.

### *Fair and Equitable Evaluations*

■ BUPERSMAN 3410150.2 requires a commanding officer to "insure that each final evaluation assigned is a true evaluation of the member * * *." In *Skinner v. United States, supra,* the Court of Claims held that a service member has "a legal right to be graded on a 'fair and equitable' basis" (219 Ct.Cl. at 329, 594 F.2d at 829). The plaintiff contends, however, that his adverse evaluations for the periods from 1975 to 1977 were neither "true evaluations" nor "fair and equitable." In particular, the plaintiff argues that his problems were the result of a personality conflict with his commanding officer and plaintiff's efforts to make the foreign civilian employees whom he supervised comply strictly with rules and procedures.

The plaintiff's claim that his adverse evaluations were inaccurate due to the personal prejudice of his ranking officer during the evaluation periods, Lt. R.E. Rankin, is unsupported. Again, it must be presumed, absent evidence to the contrary, that government officials act lawfully and in good faith in carrying out their official duties.

The plaintiff notes that his evaluations by other officers for different periods were not similar to the evaluations by Lt. Rankin. The plaintiff also contends that the statements of some of his coworkers and friends, which the Review Board did not see, corroborate his allegations of a personality conflict with, and personal prejudice by, Lt. Rankin. The mere fact, however, that evaluations by a particular superior are

adverse, or that they are dissimilar from evaluations by other superiors for different periods does not support an inference that personal prejudice tainted the adverse evaluations. Furthermore, statements of the plaintiff's coworkers and friends are not persuasive. The Enlisted Performance Evaluation System is designed to obtain evaluations of members by their commanding officers and officers in charge. Thus, the Review Board properly considered only the plaintiff's service record in recommending his reduction in rate. In any event, the statements relied on by the plaintiff, which are in the record before the court, tend to support the conclusion that the plaintiff had difficulty in working with and supervising foreign civilian employees.

The evaluations submitted by Lt. Rankin are detailed and relate particularly to the plaintiff's job performance. Lt. Rankin's evaluations were not, as the plaintiff suggests, consistently negative. For example, the evaluation for the period ending March 31, 1976, did not contain any adverse remarks, and included comments detailing the plaintiff's "noteworthy progress in all areas subject to evaluation." Moreover, the plaintiff's own statements tend to negate his contention that his unfavorable evaluations by Lt. Rankin were due to a personality conflict or personal prejudice. In a letter dated January 10, 1977, to Lt. Rankin, the plaintiff admitted that he had been the cause of his problems.

In short, there is no basis for concluding that the plaintiff did not receive accurate and "fair and equitable" evaluations.

### *Authority to Demote*

■ The plaintiff contends, finally, that the Secretary of the Navy lacks the statutory authority to order a reduction in rate pursuant to the recommendation of a Review Board. According to the plaintiff, the only lawful means of reducing a member is by conviction and punishment in a court-martial proceeding conducted pursuant to the Uniform Code of Military Justice. Under the plaintiff's theory, therefore, the ser-

vice boards and the heads of the military departments would be without authority to demote a member for incompetence or poor performance, or for anything less than criminal activity resulting in a conviction by a court-martial and a sentence that includes reduction in rate or grade. Such a proposition is, of course, without merit. Congress has conferred on the Secretary of the Navy the authority to administer the Department (10 U.S.C. § 5031 (1976 & Supp. V 1981)) and has provided that bureaus within the Navy, including the Bureau of Naval Personnel, shall act under the authority of the Secretary (*id.* § 5131 (1976)). BUPERS-MAN article 3410180 was validly promulgated pursuant to this statutory authority.

The plaintiff's reliance on *Green v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), is misplaced. In *Green,* the Government revoked the security clearance of an aeronautical engineer employed by a company which manufactured goods for the Department of Defense. The decision to revoke the clearance was based on confidential information, much of which was never seen by the employee. As a result of the revocation, the employee was discharged from his job and was unable to obtain other employment as an aeronautical engineer. The Court held that the security clearance program was unlawful because it was not authorized by either the President or Congress, and because it denied a person the right to pursue his chosen profession without a hearing where the accusers could be confronted and cross-examined.

In the present case, unlike in *Green,* the plaintiff is a member of the Armed Forces who was reduced in accordance with a regulation that is consistent with the broad authority that the military departments have in administering personnel matters. Moreover, the plaintiff's reduction was based on evaluation reports contained in his service record, which the plaintiff was aware of and which the plaintiff had an opportunity to rebut (except possibly for the excised December 31, 1973, report). For these reasons, the holding in *Green v. McElroy* is inapposite here, and the regulation under which the plaintiff was reduced in rate is valid.

### Promotion

In his complaint, the plaintiff requests, in addition to reinstatement in the rate of petty officer second class and back pay, promotion to petty officer first class.

It is well established, however, that this court cannot order a promotion. *Skinner v. United States, supra,* 219 Ct.Cl. at 332, 594 F.2d at 830.

Under some circumstances, the court can award back pay based on the compensation of a position above the position occupied by a person, but this is possible only if there is a "clear-cut, legal entitlement to it." *Id.* For the reasons already stated, the plaintiff has not shown a legal entitlement to the pay of a petty officer first class, and he cannot recover on that theory.

### Conclusion

For the reasons stated in the foregoing opinion, the court concludes that there are no material issues of fact in dispute, that the plaintiff is not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted, and the plaintiff's cross-motion for summary judgment is denied.

The complaint will be dismissed.

IT IS SO ORDERED.