**Anthony J. BRADDOCK**

v.

**The UNITED STATES.**

**No. 335–82C.**

United States Claims Court.

Jan. 31, 1986.

7. Because of this dismissal, plaintiff's filings subsequent to defendant's motion for summary judgment are moot.

Neil B. Kabatchnick, Washington, D.C., for plaintiff; Craig M. Kabatchnick, of counsel.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; Lt. Col. Buck James, Office of the Judge Advocate General, Dept. of the Army, of counsel.

## OPINION

YOCK, Judge.

This action arises from the involuntary release of the plaintiff, Anthony J. Braddock, from active duty with the United States Army on March 1, 1978. The plaintiff now seeks reinstatement to active duty in the grade of major, correction of his official military service records, and appro-

priate back pay and allowances. The matter is currently before the Court on the parties' cross-motions for summary judgment. The material facts are not in dispute.

For the reasons discussed herein, the defendant's cross-motion is granted, the plaintiff's cross-motion is denied and the complaint is to be dismissed.

*Facts*

The plaintiff, Anthony J. Braddock, served on active duty as an officer of the U.S. Army some 16 years, beginning on May 28, 1962, and ending with his involuntary release as a major on March 1, 1978. During this time, he served in a variety of assignments and was promoted through the ranks to permanent captain and, subsequently, to the temporary grade of major. Plaintiff was then considered for promotion to the permanent grade of major by the 1976 Regular Army promotion selection board convened on February 8, 1976. He was, however, not selected by that board. Plaintiff was again considered for promotion to permanent major by a Regular Army promotion selection board convened on June 8, 1977, but again, he was not selected for promotion. Based upon plaintiff's two nonselections for promotion to major, he was involuntarily discharged from the Army on March 1, 1978, pursuant to 10 U.S.C. § 3303(d) (1976).

Shortly before his separation on March 1, 1978, the plaintiff petitioned the Army Board for Correction of Military Records ("Board") on October 15, 1977, for the correction of his records. He argued before the Board, *inter alia*, that some half dozen of his Officer Efficiency Reports ("OERs"), appearing in his record that was before the 1976 and 1977 selection boards, had been prepared in violation of Army regulations and had, therefore, prejudiced his consideration for promotion by these boards. The plaintiff claims that because the 1976 and

1977 selection boards had the defective OERs before them for consideration, he was not given the "fair and equitable" consideration for promotion called for by 10 U.S.C. § 3442(c) (1976) and appropriate case law. *See Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 820 (1979), and cases cited therein.

After due consideration, including granting the plaintiff an oral hearing in which he was represented by able counsel, the Board recommended to the Secretary of the Army in its decision of August 20, 1980, that four OERs (out of 6 requested) be removed and expunged from his records.[1] The first OER ordered removed was a report prepared on the plaintiff for the period of June 23 through October 19, 1970 (OER # 2). The Board found that during the rating period, the plaintiff had not served under any one rating official for more than 90 days as called for by Army regulations and, thus, the OER should be removed. The report reflected an overall score of 94/94 (out of a possible 100/100) and indicates, pertinently, that the applicant performed in a fully effective manner in a position for lieutenant colonel and that the plaintiff exhibited the maturity and judgment not usually found in an officer serving in the grade of major. The Board ordered the report removed even though, in its view, it did not have an adverse impact on the plaintiff's military career. The second OER ordered removed was a report prepared on the plaintiff for the period of August 9, 1971 through May 3, 1972 (OER # 3). The Board found that there had been a change in policy as to who would rate the plaintiff during this period of time and that neither the plaintiff nor his branch chief (who thought he was the rating official) knew about the change of policy. This violated Army regulations that required the Army to keep officers informed of who would be their rating official. In addition,

---

1. The fourth OER ordered removed by the Board was the August 30, 1976 to August 29, 1977 OER. Since this OER was not completed before the second selection board convened on June 8, 1977 to consider the plaintiff's selection for the second time, the OER is not in issue in this proceeding. Thus, only three OERs ordered removed by the Board are germane for consideration by this Court.

the Board noted an indication of a personality conflict between the plaintiff and the official who ultimately rated him. The report reflects an overall score of 90/94 (out of a possible 100/100), indicates that it was the plaintiff's first assignment to a high level staff, that, nonetheless, through diligent effort on his part and a willingness to accept guidance and suggestions, he had performed his duties in a superior manner. Under the circumstances, the Board considered it appropriate to remove the OER from plaintiff's records. The third OER ordered removed was a report prepared on the plaintiff for the period of November 15, 1972 through April 30, 1973 (OER # 4). The Board found that during this time period the Army had announced a new rating system that had the goal of keeping the numerical ratings within certain bounds for each grade, and the plaintiff's commanding general had issued orders to all raters to live up to these more realistic, essentially lower scoring guidelines. The report reflected an overall score of 172 (out of a possible 200) and indicates that the plaintiff was an extremely conscientious officer who handled many varied and complex tasks simultaneously with splendid results. Since the Board found that, absent the command guidance, the plaintiff's score may have been higher, it concluded that it would be appropriate to remove the OER from the plaintiff's record.[2]

The fourth OER ordered removed was a report prepared on the plaintiff for the period of August 30, 1976 through August 29, 1977 (OER # 6). The Board found, based on testimony given at the hearings, that the rating official had developed a considerable animosity toward the plaintiff during the rating period, and that others who worked closely with the plaintiff had indicated that the plaintiff actually had performed his duties in an outstanding manner. Since the rating official's animosity may have affected his ability to render a fair and meaningful report, it ordered the

OER removed. The report reflected a rating of 158 (out of a possible 200) and indicated that the plaintiff's manner of performance deteriorated significantly during the period, that he did only enough to get by, tended to blame others for actions, had difficulty completing actions in a timely manner, and was not receptive to constructive criticism. As indicated earlier in footnote 1, this is the OER that was not available to the two regular selection boards that met on February 8, 1976 and June 8, 1977, nor was it included in the plaintiff's records before the two Standby Advisory Boards (STABs) that met to reconsider the earlier two nonselections by the plaintiff's regularly scheduled promotion boards.

As earlier indicated, the Board recommended in its decision dated August 20, 1980, that the above-discussed four OERs challenged by the plaintiff be removed and expunged from his records. However, the board specifically declined to void his 1976 and 1977 nonselections for promotion as well as his involuntary discharge on March 1, 1978. Instead, the board recommended that plaintiff's records, after correction, be referred to a STAB for an advisory opinion as to whether plaintiff's consideration by the original selection boards was prejudiced by the errors and injustices found by the Board. The Board stated its conclusions and its recommendation in the following manner:

7. That while the Board feels that the reports, which are recommended for removal, did have an adverse impact upon the applicant and could well have been the basis for his nonselection for promotion to major, Regular Army, it does not feel that the records should be corrected to show his promotion to major, Regular Army, or voiding his discharge of 1 March 1978; that, however, his records should promptly be referred to a Standby Advisory Board, after the reports have been removed, for reconsider-

2. Two members of the five member Board voiced a dissent that OER # 4 should be removed from the plaintiff's records. They reasoned that since the new, more realistic guide- lines were in place system-wide and that all Army officers were, therefore, rated under the new guidelines, the plaintiff should not be given any preference by having this OER removed.

ation for promotion to major, Regular Army, under the 1976 and 1977 criteria.

8. That in view of the foregoing findings and conclusions, the applicant's failure to have the OER's for the periods 23 June–19 October 1970, 9 August 1971–3 May 1972, 15 November 1972–30 April 1973 and 30 August 1976–29 August 1977, removed from his records, has resulted in an injustice.

THE BOARD RECOMMENDS:

1. That all of the Department of the Army records of ANTHONY J. BRADDOCK be corrected by removal therefrom of the officer efficiency reports for the periods 23 June–19 October 1970, 9 August 1971–3 May 1972, 15 November 1972–30 April 1973 and 30 August 1976–29 August 1977, together with all appeal correspondence heretofore submitted pertaining thereto, and that such periods be declared as non-rated.

2. That in accordance with paragraph 21e, Army Regulation 15–185, following completion of the administrative correction, the proceedings of the Board and all related documents pertaining to this appeal of the subject reports be returned to the Board for permanent file.

3. That following administrative implementation of the foregoing, the records of ANTHONY J. BRADDOCK be submitted to a duly constituted Standby Advisory Board for reconsideration for promotion to the grade of major, Regular Army, under the 1976 and 1977 criteria; that if recommended for such promotion his records then be referred to a Standby Advisory Board for consideration for temporary promotion to the grade of lieutenant colonel; and that his case be returned to this Board for implementation of the necessary actions inherent thereto.

4. That so much of his application which is in excess of the foregoing, be denied.

Thereafter, by decision dated September 19, 1980, the Secretary of the Army approved the findings, conclusions and recommendations of the Board's August 20, 1980 recommended decision.

Following the Secretary of the Army's decision, the offending OERs were removed from the plaintiff's records, together with all correspondence attached thereto, and the time periods were declared as nonrated. The plaintiff's records were then forwarded to the STAB for reconsideration for promotion to the grade of major, Regular Army, under the 1976 and 1977 selection board criteria.

Under the Secretary of the Army's regulations and standard operating procedures ("SOPs"), a STAB, is an internal, administrative board established to review, *inter alia*, the corrected records of an officer previously not recommended for promotion by a regular selection board which considered his records prior to the correction. A STAB is a remedy designed by the Secretary of the Army to test and determine whether the error in the officer's records was prejudicial or harmless. Army Regulation 624–100 ¶ 2–8c, provides in pertinent part:

Standby advisory boards are established to advise the Secretary of the Army about promotions and removals from recommended lists when promotion boards have adjourned. They are not promotion boards. The standby board advises; the Secretary of the Army acts.

(1) A standby board advises the Secretary of the Army to assist him in deciding whether—

(a) An officer should be removed from a recommended list, or

(b) An error may have prejudiced an officer's consideration by an earlier board.

(2) These procedures apply only to primary zone officers. A standby board will not consider an officer in a secondary zone.

The SOP further provided in pertinent part:

1. *Purpose.* Standby advisory boards (STAB) are convened for the purpose of making recommendations to the Secretary of the Army relative to the promotions and removals from recommended lists when originally appointed Army selection boards have adjourned.

A STAB is not itself a promotion selection board. Rather it makes recommendations to the Secretary of the Army to assist him in determining whether an officer has been prejudiced by an error in connection with an earlier promotion board. The STAB advises; the Secretary acts.

2. *General.*

\* \* \* \* \* \*

c. Whenever an officer is being considered or reconsidered for promotion, the board is governed by the instructions for the regularly convened selection board which would have or did consider the officer.

d. Upon adjournment of each STAB, a formal board report is forwarded to the DCSPER in accordance with the standing letter of instruction for standby advisory boards. The report is separated in such a way to allow identification of those recommended and not recommended so that the Secretary's signature will follow statements that:

(1) For those reconsideration cases listed as recommended, it is the board's finding that, due to the effect in these cases of administrative error or inaccurate or incomplete records, the officers were prejudiced in the original selection process and appropriate relief is warranted.

(2) For those reconsideration cases listed as not recommended, it is the board's finding that the officers were not prejudiced in the original selection process and relief should be denied.

3. *Membership.*

a. Standby advisory boards will be composed of five members who meet the seniority requirements established for regularly constituted selection boards (Table 2–1, Chapter 2). STAB's considering chaplain, JAG, or AMEDD officers will include at least one representative from each officer's branch. Membership will also include female, minority, aviator, and Reserve Component representation when officers of those groups are being considered.

b. Officers selected for STAB membership must have prior DA selection board experience. However, an officer who was a member of a regularly convened selection board may not serve on a STAB that is reconsidering the recommendations of that board. Additionally, STAB members may not consider officers for the same grade under two consecutive boards' criteria (e.g., 1977 and 1978 LTC, AUS).

\* \* \* \* \* \*

*8. Board Procedures.*

a. The Secretariat for DA Selection Board will obtain from each original selection board the names of the bottom five officers recommended and the top five officers not recommended for promotion. The records of these 10 officers will comprise the comparison cases to be used by STABs LAW their LOI.

b. The recorder assigned to each STAB will recommend the use of the following selection process.

(1) A numeric scoring system based on 1 (low) to 6 (high) scale.

(2) Comparison and STAB records to be referred to members for scoring will not be identified as to type.

(3) Rank order all records upon completion of voting based on total score.

(4) Recorder identifies the highest and lowest scored records from the "recommended" comparison records. Any STAB record with a score equal to or higher than the highest scored recommended comparison record will be considered selected, and any STAB record with a score lower than the lowest scored recommended comparison record will be considered nonselected.

(5) All STAB records and comparison records (without identification as to original board action) between the decision points in (4) above, to include the lowest scored recommended comparison file, will constitute the "grey area."

(6) The board must reevaluate all "grey area" records and, under procedures determined by the board, rank all "grey area" records in order of merit.

The board's cut point in the rank ordering will then be determined following identification of the comparison files. STAB cases rank ordered at or above the cut point will be recommended for selection with those below the cut point not recommended for selection.

c. Without regard to the internal board process used, the final recommendation of the board, as it applies to each officer considered, must reflect the majority opinion of the members.

Also, the letter of instruction (LOI) for STABs dated November 16, 1979, stated in pertinent part:

c. Officers considered will be afforded the same or comparable consideration as was given their contemporaries by the original selection board. The fact that some officers may have been considered by a previous board will be disregarded. The board's recommendation must be based upon the evaluation of the officer's file as it now appears before the board.

On April 6, 1981, a STAB considered the plaintiff under the 1976 criteria for the permanent grade of major and did not recommend plaintiff for promotion. On December 16, 1981, a second STAB considered plaintiff under the 1977 criteria and did not recommend promotion. None of the officers sitting on the STABs had earlier sat on the regular selection boards that had considered the plaintiff's records in 1976 and 1977. By letter dated April 20, 1981, the plaintiff was notified that he was not recommended for promotion by the STAB that reconsidered his case on April 6, 1981, and that his promotional status as determined by the regularly constituted promotion board (1976) remained unchanged. On April 19, 1982, the plaintiff was again notified by the Army Military Personnel Center that the STAB that sat to reconsider his 1977 nonselection on December 16, 1981, had also not recommended the plaintiff be promoted, and that his promotion status as determined by the regularly constituted promotion board (1977) remained unchanged. The plaintiff thereafter heard nothing further from the Correction Board in regard to his case.

Having heard nothing further from the Board on his case, the plaintiff, on July 9, 1982, filed his current action with this Court. Contemporaneously with the complaint, however, the plaintiff moved for suspension of the action before the Court in order to complete administrative review before the Board. The Court allowed the suspension motion and on September 30, 1982, the plaintiff submitted a request for *de novo* reconsideration by the Board seeking, *inter alia*, the voiding of his 1976 and 1977 passovers, voiding of the 1981 STAB decisions, voiding of his March 1978 discharge, promotion to major, and ancillary relief. The Board reconsidered his request, and, on February 7, 1983, determined that there was insufficient justification for taking further action in the case. In reaching this conclusion, the Board made its own evaluation but also relied, in part, upon several Army advisory opinions including the decisions furnished by the STABs to determine that there was no sound basis for plaintiff's promotion.

In its February 1983 opinion denying plaintiff's requested relief, the Board concluded in pertinent part:

10. That while the Board did conclude that the four OERs, which were removed from the applicant's records, could have been a basis for his nonselection for promotion to the grade of major, Regular Army, it did not feel that his records should be changed to show his promotion to such grade, unless he was recommended for such promotion by a STAB; that a STAB consists of officers who have been engaged in the daily business of evaluating and comparing officers' records with that [sic] of their contemporaries, and are in the best position for making a determination as to whether a member would have been selected for promotion, under the criteria established by the Department; that considering the applicant's records have been reviewed by two separate STABs, after the four contested OERs were removed from his

records, and both Boards have opined that he would not have been selected for promotion, the ABCMR can find no sound basis for changing the records to show such a promotion.

11. That the ABCMR feels that the circumstances of this case are different from that of the Evensen case, in that the matter of voiding his prior nonselections for promotions were [sic] specifically considered by the Board in August 1980, and that portion of this application denied; that while the Board did recommend that four of the contested OERs be removed from his records and his records then be referred to a STAB for reconsideration for promotion, it was not the intent of the Board that such action should work to invalidate his prior nonselections for promotion; that based on the evidence the ABCMR had before it there was a valid and justifiable basis for the recommendations made by the ABCMR, and the actions taken as a result thereof.

12. That the Board feels that the primary reason for the Court's decision in the Evensen case was the fact that the STAB, which considered him for promotion under the 1976 and 1977 criteria, consisted of the same officers who had considered him upon the regular consideration in 1977; that such actions did not occur in the case at hand; that all the Boards which considered this applicant for promotion were composed of officers who had not previously considered him for promotion.

13. That in view of the foregoing findings and conclusions there is insufficient justification for taking any further action on this case.

The Secretary of the Army approved the Board's recommended decision on February 17, 1983.

Thereafter, the plaintiff moved to vacate the Court's suspension of this case and proceeded to file his current cross-motion for summary judgment in this matter.

## Discussion

In his summary judgment motion, the plaintiff challenges the Board's decision on his case as being arbitrary and capricious and in violation of law. Specifically, he alleges that the Board's decision voiding the 1970–73 OERs (OERs # 2, # 3, and # 4), and yet refusing to void the plaintiff's nonselections for promotion to the permanent grade of major by the February 8, 1976 and June 8, 1977 selection boards, and also refusing to void the plaintiff's involuntary discharge on March 1, 1978, was arbitrary and capricious and in violation of law.

The defendant responds by denying that the decision of the Board was arbitrary and capricious, and affirmatively argues that the plaintiff's case should be dismissed for laches. The Court will first examine the defendant's laches argument.

### I. Laches

 The defendant argues that the plaintiff's claim should properly be barred by the doctrine of laches. The doctrine of laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed the assertion of his claim. *Brundage v. United States,* 205 Ct.Cl. 502, 505, 504 F.2d 1382, 1384 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). The two essential elements of laches are an inexcusable delay by the plaintiff in filing suit coupled with prejudice to the defendant as a result of such delay. *Foster v. United States,* 3 Cl.Ct. 440, 442 (1983); *aff'd,* 733 F.2d 88 (Fed.Cir.1984); *Carrasco v. United States,* 215 Ct.Cl. 19, 29 (1977) *modified* at 215 Ct.Cl. 1044 (1978); *Albright v. United States,* 161 Ct.Cl. 356, 362 (1963). If laches is to serve any real purpose, the time from the accrual of the claim to the prospective date of judgment must be considered in evaluating the reasonableness of the plaintiff's delay. *Frommhagen v. United States,* 216 Ct.Cl. 1, 5, 573 F.2d 52, 55 (1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979). This time period is relevant because "[t]he search for truth is always imperiled with the passage of time." *Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1387. The greater the passage of time, the great-

er is the prejudice to the defendant from the loss of evidence by missing witnesses, human forgetfulness, or lost documents. *Frommhagen v. United States, supra,* 216 Ct.Cl. at 7, 573 F.2d at 56.

Here, the plaintiff's application to the Board seeking administratively to challenge the contested OERs at issue and to remove any reference to his prior non-selection for promotion was filed on October 15, 1977, eighteen days after he was informed of the second selection board's decision not to recommend him for promotion. The plaintiff was advised of the final STAB's recommendation on April 19, 1982, and he filed the instant suit on July 9, 1982. Although a four year interval elapsed between his discharge on March 1, 1978, and his filing suit in the U.S. Court of Claims on July 9, 1982, the plaintiff actively and diligently pursued his administrative remedies during such period.

In *Riley v. United States,* 221 Ct.Cl. 308, 314–15, 608 F.2d 441, 444 (1979), the plaintiff waited four years to challenge one OER and five years to challenge another OER, before filing a claim for their removal with the Officer Personnel Records Review Board. The Court of Claims in *Riley* held that:

> The boards which considered plaintiff's applications for correction found either that they were timely or that the delay was excusable in the interest of justice. The Officer Personnel Records Review Board granted plaintiff's requested relief. We do not see any reason to challenge the decisions of these boards to entertain plaintiff's claim.

*Riley v. United States, supra,* 221 Ct.Cl. at 315, 608 F.2d at 444.

Thus, in view of the plaintiff's diligent pursuit of his administrative remedies during all relevant time periods, this Court disagrees with the Government that the plaintiff's claim should now be barred by the doctrine of laches. Therefore, the Court turns to the plaintiff's arguments on the merits.

## II. Merits

As earlier indicated, the plaintiff argues that the Board's decision(s) on his case was arbitrary and capricious and in violation of law. Specifically, the plaintiff alleges that the Board's initial decision of August 20, 1980, voiding the 1970–73 OERs, and yet refusing to void the plaintiff's nonselections for promotion, and also refusing to void the plaintiff's involuntary discharge on March 1, 1978, was arbitrary and capricious and in violation of law. The plaintiff claims that because the Board ordered the removal of the three OERs at issue, it could come to no other legal conclusion but that such removal mandated the further voiding of the plaintiff's nonselections and his subsequent involuntary discharge. In bolstering its argument, the plaintiff points to the fact that the three voided OERs (1970–1973) at issue amounted to 30 percent of all the OERs written on the plaintiff while serving in the temporary grade of major. Also, the plaintiff points to the language of the Board's decision of August 20, 1980 where it stated that the OERs "did have an adverse impact upon the applicant and could well have been the basis for his nonselection," to argue that the Board found prejudice and that the prejudice was material, in the sense that it was not simply harmless error. The plaintiff argues further that, under these circumstances, the Board was compelled at that point to void the plaintiff's two nonselections and his involuntary discharge and to place the plaintiff back on active duty. It could not merely refer the matter to a STAB for "reconsideration" of the plaintiff's prior nonselections. Because the Board already found prejudicial error, the plaintiff was legally entitled to have his nonselections expunged, to be put back on active duty, and to have his records go before two other regularly scheduled selection boards with a clean slate of his corrected records to see whether he would make promotion without the erroneous and unjust records contained therein. The plaintiff relies primarily on *Evensen v. United States,* 228 Ct.Cl. 207, 654 F.2d 68 (1981) for this assertion. Sec-

ondarily, he relies on *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979).

To counter the plaintiff's argument on the merits, the defendant asserts that the plaintiff misread and misunderstands what the Board decision in the plaintiff's case accomplished. The defendant's argument on the merits is based on its conclusion that the Board's initial decision of August 20, 1980, only decided that the OERs were defective and were to be removed. It did not decide the question of prejudice or harmless error. The Board deferred the question of prejudice or harmless error until it could receive further advisory opinions and evidence from the STABs and other sources. When the Board received that additional advice and assistance from the STABs and other sources, it then proceeded to decide the prejudice/harmless error question. The Board's final decision in the plaintiff's case issued February 7, 1983, unfortunately for the plaintiff, decided the issue of prejudicial error against him.

■ With the issues framed in this manner, this Court concludes that the Government must prevail in this action.

To begin with, it has often been stated that this Court is bound to uphold the decisions of the correction boards unless plaintiff clearly demonstrates that they were arbitrary, capricious, unsupported by substantial evidence, or contrary to law. In *Sanders v. United States*, the former United States Court of Claims rearticulated its standard of review of correction board decisions.

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

219 Ct.Cl. at 298, 594 F.2d at 811. *See Skinner v. United States*, 219 Ct.Cl. 322,

594 F.2d 824 (1979); *Boyd v. United States*, 207 Ct.Cl. 1 (1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Cooper v. United States*, 203 Ct.Cl. 300 (1973); *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

■ The Court of Claims has repeatedly held that, in order to overturn a correction board's decision, a claimant must present "cogent and clearly convincing evidence." *Cooper v. United States*, 203 Ct.Cl. 300, 304–05 (1973). A claimant is required to overcome the presumption that "administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States*, 219 Ct.Cl. at 302, 594 F.2d at 813, *cited with approval in Grieg v. United States*, 226 Ct.Cl. 258, 640 F.2d 1261 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). *See also Bockoven v. Marsh*, 727 F.2d 1558, 1563 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984), where the Federal Circuit recently stated that highly trained and disciplined Army officers should be presumed to have followed direct orders to disregard any information not properly before them in making their selection decisions. An error or injustice is reversible only if it is substantial, material and prejudicial to the claimant. *Sanders v. United States, supra*, 219 Ct.Cl. at 298, 594 F.2d at 811; *Skinner v. United States, supra*, 219 Ct.Cl. at 329, 333, 594 F.2d at 828, 830; *Cruz-Casado v. United States*, 213 Ct.Cl. 498, 503, 553 F.2d 672, 675 (1977).

It is well settled that the mere voidance of OERs does not mandate voidance of prior passovers where the presence of the subsequently-voided OERs in the record considered by the promotion boards was harmless or not prejudicial. *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704 (1980); *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982). Thus, the question here is whether the Board was arbitrary and capricious in finally concluding that the presence of the erroneous OERs in

plaintiff's file was harmless error and did not substantially prejudice plaintiff's consideration for promotion.

■ Upon a thorough reading of the Board's decision(s) in this case, the Court concludes that the Government is essentially correct in its legal analysis. The Board, in its initial decision of August 20, 1980, was sure that the offending three (1970–73) OERs did have "an adverse impact" upon the plaintiff and "could well have been the basis for his nonselection for promotion to major, Regular Army." However, the Board in the same sentence went on to say that "it [however] does not feel that the records should be corrected to show his promotion to major, Regular Army, or voiding his discharge of 1 March 1978; that, however, his records should promptly be referred to a Standby Advisory Board, after the reports have been removed, for reconsideration for promotion to major, Regular Army, under the 1976 and 1977 criteria." The Board then ordered that the records be corrected, the corrected records be submitted to the STABs and the case be returned to the Board thereafter for the appropriate implementation action. In short, the Board, in its initial August 20, 1980 decision, found that three OERs were defective and should be removed, but, at the same time, it wished to test for prejudice/harmless error by referring the corrected records to a STAB. In substance, the Board was deferring its substantial prejudice/harmless error decision to a later date until they received the advisory opinions from the STABs, as well as from other military entities. This Court finds nothing wrong with this procedure. The Board had the perfect right to do this in the pursuit of truth and justice. 10 U.S.C. § 1552 (1976). This Court has consistently sanctioned the right of the Board to receive advisory opinions and recommendations before deciding weighty matters such as those involved in this case. *See Koster v. United States,* 231 Ct.Cl. 301, 309–10, 685 F.2d 407, 412–13 (1982); *Armstrong v. United States,* 205 Ct.Cl. 754, 764 (1974).

■ Nor can the Court find fault with the procedures used by the STAB in this case, pertinent parts of which were detailed earlier in the factual part of this opinion. The STABs reviewed the plaintiff's corrected records under the criteria used by the 1976 and 1977 Regular Army selection boards. It had a clean slate to work on (the corrected record), and it compared the clean record with the records of an appropriate sampling of the plaintiff's contemporaries back in 1976 and 1977, some of which had been selected for promotion and some had not. In this Court's view, the STAB process was fair, and it gave the plaintiff the fair and equitable opportunity for promotion that is called for by the statute. 10 U.S.C. § 3442(c) (1976). Indeed, even the plaintiff does not attack the STAB procedure, nor the fact that the Board referred the matter to the STABs for an advisory opinion. The plaintiff merely takes issue with the STAB's decision(s) that failed to recommend promotion, and for the Board's failure to automatically review the STAB's advisory opinions after they were rendered. The plaintiff, of course, also believes that the referral of the plaintiff's case to the STABs in the first place was unnecessary since, in his view, the Board had already decided the prejudicial/harmless error matter in its initial decision of August 20, 1980. As earlier indicated, however, that view of what the Board accomplished in its initial decision was wrong. In any event, this Court finds nothing wrong with the STAB's procedure and their purpose, which was to operate as a substantial prejudice/harmless error advisory board to advise the Secretary of the Army and the Board on matters of record errors and prejudice. This limited role of STABs has previously been recognized and sanctioned by the courts. *See Evensen v. United States, supra,* 228 Ct.Cl. at 213, 217–18, 654 F.2d at 72, 74; *Doyle v. United States,* 220 Ct.Cl. 285, 293, 306, 599 F.2d 984, 990, 997, *modified* at 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Coughlin v. Alexander,* 446 F.Supp. 1024 (D.D.C.), *aff'd,* 589 F.2d 1115 (D.C.Cir.

1978). In addition, it is noted that Congress basically ratified the STAB process when it enacted 10 U.S.C. § 628 in 1980.

The plaintiff in his argument to this Court places great reliance on the case of *Evensen v. United States, supra,* 228 Ct.Cl. 207, 654 F.2d 68 (1979). *Evensen* was a case in which the plaintiff had similarly been passed over twice for promotion by the regular promotion boards that had before them two defective OERs. After the Board had ordered the OERs removed, the Army sent his corrected records forward to a STAB for review of his nonselections. The STAB decided not to recommend Evensen for promotion. The Court of Claims reversed the Board's decision and found for the plaintiff. In doing so, the Court wrote at length about the "cardinal vice" of the case which was that the STAB was composed of the same officers that had earlier sat on his two regular selection boards. Although the "cardinal vice" of the case was the legal error involved in the composition of the STAB, the court also held that the Board was unclear as to whether it really had intended to void the passovers. Because of the ambiguous language used by the Board, the court inferred that the Board really meant to void the passovers before the matters were sent to the STAB, and thus the Board really intended the STAB to operate as a *de novo* selection board and not as a harmless error advisory board.

Unfortunately for the plaintiff in this case, however, the circumstances are not similar. This case neither has the "cardinal vice" of the compositional legal error in the make up of the STABs, nor does this case have the same ambiguous language that was present in the *Evensen* case. The Board's language in this case was clear that it intended to use the STABs as a substantial prejudice/harmless error advisory board. Hence, the plaintiff's reliance on *Evensen* in this case is misplaced.

▪▪▪ A few words should also be said about the plaintiff's attempt to show to the Court that the defective OERs were so materially prejudicial that the Board had

no other legal recourse in its first decision of August 20, 1980, other than to find that the prejudice warranted a voiding of his passovers and his discharge at that time. Without spending a great amount of time on each of the three OERs at issue, the Court notes that none of the three OERs ordered removed were all that bad in numerical score or written summary. Nor for that matter were the numerical scores much different from what the plaintiff had received on the OERs that were still in his record. The Board even found that the OER # 2 ordered removed was "not of such a nature to have had an adverse impact upon the [plaintiff's] military career." Also, the Court notes that OER # 4 ordered removed was the subject of a two-Board member dissent as to whether it even should have been removed (see footnote 2, *infra* ). Thus, after studying the entire administrative record in this case, it is clear to this Court that the plaintiff fell into the "grey-area" category of officer. He was neither in the outstanding category that clearly would have been promoted under any criteria, nor was he an "also ran" that would clearly not have been promoted under any circumstances. This being the case, this Court is extremely reluctant to second guess the appropriate military officials whose job it is to decide these military personnel promotion matters. *See Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). It has been stated time and time again that this Court will not sit as a super selection board. *See Sanders v. United States, supra,* 219 Ct.Cl. at 307, 594 F.2d at 816. This Court merely decides whether, under the entire factual circumstances presented to it, the Board has clearly acted in an arbitrary and capricious manner. In this case, we cannot so conclude. This Court believes that the Board was within its rights to test for prejudice/harmless error, which it did by sending the matter to the STABs for reconsideration under the heretofore approved procedures. This Court simply cannot find that the removed OERs were so materially defective and prejudicial that the Board was legally wrong in not voiding the plaintiff's

passover and his discharge in the first instance. This case appears to this Court to be the classic case where the Court should not substitute its judgment for that of the military authorities.

Finally, a word should be said about the Board's failure to automatically review the STABs' decisions. The plaintiff has argued that the Board's failure to review the STABs' prejudice/harmless error decisions after they were rendered proved that the Board had simply abdicated its statutory responsibilities under 10 U.S.C. § 1552 to the STABs and that such abdication of authority amounted to legal error warranting reversal. While it is quite true that the Board did not receive the STABs' decisions back for review after they were rendered, it is also quite true that the plaintiff, after filing suit in this Court, requested that the Board reconsider its August 20, 1980 decision, and that the Board accepted the plaintiff's request for reconsideration. Thereafter, the Board did what it was legally required to do, *i.e.*, it reviewed the plaintiff's entire record including the STABs' advisory opinions and other advisory matters presented to it and came forward with its final decision on February 7, 1983.

 Had the plaintiff not requested reconsideration of his case by the Board, or had the Board not accepted the matter for reconsideration, the plaintiff might well have had the legal error that it so diligently argues for now. On the other hand, it is quite possible that this Court would have simply remanded the case back to the Board to do what it should have done anyway. However that may be, the potential legal error that the plaintiff argues for was corrected by the Board and thus cured. *See Doyle v. United States, supra,* 220 Ct.Cl. at 311–12, 599 F.2d at 1000–01. The Board did reconsider the case, and after due deliberations, which included the STAB advisory opinions (and other matters), concluded that the plaintiff was not entitled to relief. Under these circumstances, the Court cannot conclude that the Board acted arbitrarily or capriciously in its entire handling of this case.

In summary, this Court concludes from all of the evidence in the record that the plaintiff received fair and equitable consideration for promotion as called for by appropriate statute and regulations. The plaintiff has failed to convince this Court that the Board's actions were arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law.

## CONCLUSION

For the reasons mentioned in this opinion, the defendant's cross-motion for summary judgment is granted, the plaintiff's cross-motion for summary judgment is denied and the complaint is to be dismissed.