**702**

Earnest C. THOMPSON

v.

The UNITED STATES.

No. 443–85C.

United States Claims Court.

April 27, 1988.

Deborah LaBelle, Detroit, Mich., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Lt. Dennis Argall, Dept. of the Navy, of counsel.

## OPINION

MARGOLIS, Judge.

In this military pay case, plaintiff appeals from a decision of the Board for Correction of Naval Records (BCNR). Specifically, plaintiff asks that this court reverse the decision discharging the plaintiff, revoke the cancellation of plaintiff's enlistment extension, reinstate plaintiff to Recruiters School, correct plaintiff's records by deleting certain fitness reports, and award plaintiff back pay and benefits. The parties have filed cross motions for summary judgment. After a full review of the record and after hearing oral argument, defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.

## FACTS

Plaintiff Earnest C. Thompson enlisted in the United States Air Force on June 30, 1965. On October 23, 1968, he was discharged from the Air Force to enlist in the Air Force Reserve. Several months later, on January 21, 1969, plaintiff enlisted in the United States Marine Corps. Since this enlistment in 1969, the plaintiff subsequently reenlisted on four occasions. The most recent reenlistment was on August 19, 1978 for a four year period ending on August 18, 1982.

Plaintiff's service record evinces commendable performance. He served two tours of duty in Vietnam, was awarded the Cross of Gallantry with Palm, service Medals of Honor, and numerous commendations and letters of appreciation. During his service, plaintiff served in the President's Parade Staff and was promoted through the ranks to Gunnery Sergeant. In late 1980, plaintiff was assigned to the 2d Marine Division at Camp Lejeune, North Carolina. In late 1981, the plaintiff sought and gained transfer to Recruiters School.

In January 1982, the plaintiff reported to Recruiters School at the Marine Corps Recruit Depot, San Diego, California. Participation in Recruiters School requires that the candidate have sufficient obligated service remaining to complete a tour of recruiting duty. Because the plaintiff did not have sufficient obligated service, the plaintiff executed a request on January 11, 1982 for an enlistment extension of seven months. This request was approved.

Shortly after Recruiters School began, two unfavorable fitness reports were forwarded to the Recruiters School for action by the plaintiff. Fitness Report 810914–811023,[1] already signed by the plaintiff, was forwarded to Recruiters School due to the plaintiff's earlier expressed intention to submit a rebuttal statement. Plaintiff submitted a rebuttal statement on February 11, 1982.

The second fitness report, 801201–810327, was forwarded to Recruiters School for the plaintiff's signature. The plaintiff signed the report and submitted a rebuttal statement on February 10, 1982. In his rebuttal statement, the plaintiff complained that the report was not timely. The report had been mailed from Japan in August 1981, where the Reporting Senior was stationed, five months after the reporting period had closed. The plaintiff indicated that when the report was initially presented to him on August 13, 1981, he refused to sign it and was never counseled on the report.

These adverse fitness reports came to the attention of Major S.G. Rogers, Director of the Recruiters School. Major Rogers then contacted Marine Corps Headquarters to determine whether these two reports were isolated incidents or whether they were typical of the plaintiff's past

---

**1.** Each six-digit number identifying the fitness report represents the starting and ending dates for the fitness report. The first two digits represent the year, the second two digits represent the month, and the final two digits represent the day. For example, fitness report 810914–811023 covers the period from September 14, 1981 through October 23, 1981.

performance. Major Rogers discovered that the plaintiff had received other recent adverse fitness reports.

After reviewing the plaintiff's military record and meeting with the plaintiff, Major Rogers disenrolled the plaintiff from Recruiters School on January 25, 1982, "due to substandard performance." In the order disenrolling the plaintiff, Major Rogers also indicated that the two fitness reports forwarded to Recruiters School "were very adverse and a check of the [Marine Corps Headquarters'] records indicates a history of substandard performance which does not make [Gunnery Sergeant Thompson] a suitable candidate for recruiting duty."

Upon disenrollment from Recruiters School, the plaintiff returned to the 2d Marine Division, his previous command. Fitness Report 820203–820528, covering the period between February 3 and May 28, 1982 while plaintiff was serving in the 2d Marine Division, was highly critical of plaintiff's performance. First Lt. T.F. Western, Company Commander, stated that the plaintiff "continually failed to show any initiative, motivation, or cooperation." First Lt. Western further stated that due to the plaintiff's uncooperative attitude and lack of desire to improve, the plaintiff "would not be able to handle the responsibilities that would come with promotion, as he is unable to perform in his present grade.... He is not recommended for promotion or reenlistment." The Reviewing Officer, Lt. Col. E.T. Nervo, concurred with 1st Lt. Western's assessment of the plaintiff's performance. Lt. Col. Nervo commented that the plaintiff continually expressed dissatisfaction with his job and accused numerous people of "being out to get him." The plaintiff wrote a detailed rebuttal to this fitness report addressing each accusation leveled against him.

On May 20, 1982, by direction of the Commanding General of the 2d Marine Division, the plaintiff's enlistment extension was cancelled in accordance with Marine Corps Order P 1040.31C ¶ 3201.2(a). That regulation allows a commanding officer to cancel an enlistment extension prior to its effective date when the Marine's performance of duty so warrants.

On June 7, 1982, the plaintiff received notice that his Commanding Officer had requested the Regimental Commander to convene a Competency Review Board ("review board") to reduce the plaintiff in rank to Staff Sergeant due to his "demonstrated lack of technical and professional ability." On July 1, 1982, after questioning witnesses and examining evidence, the review board recommended that the plaintiff be reduced in rank to Staff Sergeant and not be offered the opportunity to reenlist.

On August 18, 1982, it was determined that the plaintiff did not meet the basic reenlistment prerequisites of the Marine Corps and, as a result, was discharged. Plaintiff was assigned a reenlistment code of RE–3C. This code indicates that in determining eligibility for reenlistment, the applicant's file should be reviewed in detail to understand the circumstances of his discharge.

On September 7, 1982, the plaintiff filed an application for correction of his records. In that application, the plaintiff sought: removal of all fitness reports received while assigned to the 6th Marine Regiment and Recruiters School; and reinstatement as a Gunnery Sergeant in the Marine Corps. On December 7, 1982, the plaintiff filed a second application for correction of his records, this time seeking removal of five separate page 11 entries.

On April 26, 1983, the BCNR reviewed the plaintiff's September 7, 1982 application. The BCNR found that "the evidence submitted was insufficient to establish probable material error or an injustice." In so concluding, the BCNR concurred with the findings made by the Performance Evaluation Review Board (PERB) in its report on the application.

On November 23, 1983, the BCNR reviewed the plaintiff's December 7, 1982 application and recommended that the plaintiff be granted partial relief in the form of removing several page 11 entries. In February 1984, the plaintiff requested reenlistment in the Marine Corps. On April 12, 1984, the Marine Corps reviewed

the plaintiff's record (with certain page 11 entries omitted) and concluded that the plaintiff's record revealed substandard performance of his duties and deficiencies in initiative, leadership, attention to duty, and growth potential. The plaintiff was informed that if he has any new relevant evidence, he may again petition the BCNR for removal of disputed fitness reports and reinstatement to the grade of Gunnery Sergeant.

## DISCUSSION

The plaintiff raises essentially three claims in his motion for summary judgment. First, the plaintiff argues that the defendant's cancellation of the plaintiff's enlistment extension violated both the terms of the enlistment extension and Marine Corps regulations governing enlistment extensions. The plaintiff's second claim is that the defendant improperly disenrolled the plaintiff from Recruiters School. The plaintiff's final claim is that his demotion was a result of his improper disenrollment from Recruiters School and the inclusion of certain erroneous fitness reports in his record.

### A. *Jurisdiction*

▇▇▇ The defendant strenuously argues that this court does not have jurisdiction to review defendant's demotion of plaintiff.[2] The defendant mistakes the court's deferential scope of review for a lack of jurisdiction. This court does have jurisdiction to review a decision of a board of correction for military records having pay consequences. *Varn v. United States,* 13 Cl.Ct. 391, 394 (1987). However, in such a case, the court's scope of review is very narrow. *See Bockoven v. Marsh,* 727 F.2d 1558, 1566 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Murray v. United States,* 9 Cl.Ct. 71, 74 (1985). This court is mindful that "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." *Voge v. United States,*

844 F.2d 776, 779 (Fed.Cir.1988) (quoting *Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981)).

In an appeal from the BCNR, this court's review is limited to determining whether there has been substantial compliance with statutes and regulations, whether the BCNR acted arbitrarily or capriciously in denying the plaintiff relief, and whether there is substantial evidence to support the BCNR's decision. *Morrow v. United States,* 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *California Canners & Growers Association v. United States,* 9 Cl.Ct. 774, 782–83 (1986). The court does not sit as a super correction board. *Skinner v. United States,* 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829–30 (1979).

▇▇▇ As the Court of Claims stated in *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813–14 (1979) (citations omitted):

> Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards.

Thus, where reasonable minds might reach differing conclusions, the court will not substitute its judgment for that of the correction board's, especially when the correction board is determining the suitability of an individual to be a military officer. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814.

To prevail, the plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like oth-

---

**2.** The defendant also argues that this court does not have jurisdiction to consider the defendant's refusal to reenlist the plaintiff. However, the plaintiff recognizes that reenlistment authority rests solely with the Marine Corps and does not ask this court to review the defendant's refusal to reenlist the plaintiff. Therefore, that jurisdictional argument will not be addressed.

er public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813. To rebut this presumption, the plaintiff must establish through "cogent and clearly convincing evidence" that the BCNR's decision was arbitrary, capricious, not supported by substantial evidence, or contrary to law. *Cooper v. United States*, 203 Ct.Cl. 300, 304 (1973).

### B. *Cancellation of the Enlistment Extension*

■ Marine Corps regulations ¶ 3201.1–.3 govern the cancellation of enlistment extensions. While an enlistment extension may not be cancelled for any reason after its effective date, ¶ 3201.1, regulations allow commanders to cancel an extension before its effective date if "the Marine's performance of duty so warrants," ¶ 3201.2(a). Commanders may also cancel an extension when Marines have extended their enlistment specifically for Recruiting School, "and through no fault of their own have failed to receive the benefits for which they were extended...." ¶ 3201.2(e).

Another regulation, however, provides: "Extensions of enlistments will not be cancelled: (a) When the Marine who extended for the purpose of attending a service school is dropped from the course due to lack of application or misconduct." ¶ 3201.3(a). Likewise, in paragraph 13 of the enlistment extension, the signatory confirms that "this extension of enlistment will not be cancelled in the event I am dropped from the course due to my lack of application or misconduct on my part."

The plaintiff argues that because the extension was cancelled, at least in part, due to his lack of application, the Marine Corps was precluded from cancelling the extension. The defendant claims that this argument was never raised before the BCNR, and therefore the plaintiff has waived consideration of the claim. Plaintiff argues that the claim was, in fact, raised before the BCNR.

In this court's review of the plaintiff's applications for correction of records, this court finds that the plaintiff did not challenge the propriety of the cancellation of the enlistment extension before the BCNR. In his BCNR applications, the plaintiff only sought removal of certain fitness reports and page 11 entries. The plaintiff argued only that his reduction in rank and subsequent recommendation against reenlistment were a direct result of the adverse reports and entries. There is no evidence in the administrative record that the plaintiff raised, or that the BCNR considered, any argument that cancellation of the enlistment extension was a violation of Marine Corps regulations. In fact, in the plaintiff's December 7, 1982 BCNR application, plaintiff stated in reference to the enlistment extension that "I asked for it to be cancelled two months prior to the date of the entry." Plaintiff's Motion for Summary Judgment, App. at 8.

It is well settled that "a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it." *Doyle v. United States*, 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Burns v. United States*, 9 Cl.Ct. 273, 278 (1985). Having failed to raise the issue of the validity of the cancellation of the enlistment extension before the BCNR, the plaintiff cannot now, for the first time, raise that argument in this court. While the plaintiff is correct that this claim is otherwise within this court's jurisdiction, the failure to properly raise the issue before the BCNR bars the plaintiff from asserting that claim before this court.

The plaintiff also argues that the question of whether the issue was raised before the BCNR is irrelevant because the pursuit of administrative relief in this case is permissive, rather than mandatory. While the plaintiff did not have to apply to the BCNR for relief, "once a party has availed himself of this administrative process he is bound by it unless the decision is unsupported by substantial evidence, arbitrary, capricious, or contrary to law." *Doyle*, 220 Ct.Cl. at 311, 599 F.2d at 1000.

## C. *Disenrollment from Recruiters School*

Plaintiff also seeks reinstatement to Recruiters School. The plaintiff alleges that in dismissing plaintiff from Recruiters School, defendant improperly and in violation of regulations relied upon two fitness reports from previous tours that the defendant received after the plaintiff was admitted to Recruiters School. The plaintiff argues that one of these reports was not properly submitted at that time and therefore not yet part of his record.

The defendant argues that this court lacks jurisdiction to review the decision to disenroll the plaintiff from Recruiters School.[3] The plaintiff's disenrollment from Recruiters School did not entail any pay consequences; plaintiff remained a Gunnery Sergeant and was not penalized for the disenrollment. Plaintiff does not allege that he was deprived of any pay or other entitlements as a consequence of his disenrollment from Recruiters School.

The plaintiff argues that this court "has jurisdiction to review claims of defendant's arbitrary and capricious actions and violations of policies, procedures and regulations." Plaintiff's Opposition at 6. However, the plaintiff fails to allege a monetary nexus to the disenrollment.

As stated above, the Claims Court's jurisdiction is well defined. A claim based upon a discretionary military duty assignment that does not involve a monetary component falls outside of this court's Tucker Act jurisdiction. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813–14. Therefore, absent a monetary claim, this court does not have the jurisdiction to review the defendant's decision to disenroll the plaintiff from Recruiters School.

## D. *Demotion as a Result of Erroneous Fitness Reports*

The plaintiff further argues that the BCNR's failure to remove three fitness reports from the plaintiff's record violated Marine Corps regulations. The plaintiff maintains that his demotion was based in part on these reports in his record. The plaintiff seeks to have the fitness reports removed from his record, and to be reinstated to his former position, together with all back pay and benefits due.

In cases challenging the validity of fitness reports, the court's review is limited to a determination of whether the Marine Corps complied with established procedures. *Voge v. United States,* 844 F.2d 776, 778–79 (Fed.Cir.1988). However, even if the challenged fitness reports are erroneous, the BCNR's decision is reversible only if the error is substantial, material, and prejudicial to the claimant. *Braddock v. United States,* 9 Cl.Ct. 463, 472 (1986).

The plaintiff claims that two of the reports, 800826–801130 and 801201–810327, did not comply with regulations that require counseling prior to submission. The plaintiff also claims that Marine Corps regulations were violated because one of these reports was submitted 16 months after the reviewing period, while the second report was submitted to the plaintiff 5 months after the reporting period closed.

In the rebuttals to each of these fitness reports, the plaintiff raised these same timeliness and counseling issues. In response, the Reviewing Officer indicated that there had been frequent observation of the plaintiff, that the plaintiff had been given sufficient notice of his substandard performance, and further, the Reviewing Officer concurred with the adverse comments of the Reporting Senior. The plain-

---

**3.** The defendant appears to confuse jurisdiction with reviewability. In both its moving brief and reply brief, the defendant seems to argue that there are both jurisdictional and reviewability obstacles. Whether the court has jurisdiction over a claim and whether that claim is reviewable are two different inquiries the court must make. *See, e.g., Woodard v. Marsh,* 658 F.2d 989, 992–93 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). Because the issue is resolved based on jurisdictional grounds, the court need not address the issue of whether the claim would have been reviewable if the plaintiff had raised a monetary claim in connection with the disenrollment.

**708**

tiff also brought these matters to the attention of the Competency Review Board convened to consider plaintiff's demotion. The review board heard testimony that the reports were late due to the fact that plaintiff's Reporting Senior had been transferred to Japan.

In presenting its findings, the review board based its decision to demote the plaintiff primarily upon testimony presented at the hearing. The review board heard testimony from two of plaintiff's Reporting Seniors, two of plaintiff's platoon commanders, one of his company commanders, and two sergeants who had worked alongside the plaintiff. Their testimony uniformly painted the plaintiff as a Marine of average competence, but lacking enthusiasm and initiative.

The plaintiff also raised the timeliness and counseling issues on review before the BCNR. Concerning the two late fitness reports, the PERB found that: "Throughout these periods, the petitioner was assigned in vital billets with daily, personal access to his reporting senior. Under the stated circumstances, performance feedback was certainly timely and frequent." Defendant's Cross Motion for Summary Judgment, App. at 2. Therefore, the PERB found no justification to dismiss the appraisals of the plaintiff's performance contained in the fitness reports. The BCNR adopted the PERB's conclusions.

Further, the plaintiff has not shown that the two late fitness reports significantly contributed to his demotion. The review board did not rely solely, or even primarily, on the plaintiff's paper record, but instead took extensive testimony from a wide range of servicemembers who had worked with the plaintiff at various times over the period in question. Even if the BCNR had not considered these two challenged fitness reports, three of the plaintiff's four remaining fitness reports were adverse.[4]

Considering that other more recent adverse fitness reports are part of the plaintiff's record, and in light of the Competency Review Board's findings, the PERB's review, and the BCNR's review, this court cannot conclude that these contested fitness reports materially contributed to the plaintiff's demotion.

The third fitness report the plaintiff seeks to have removed from his record, 820203–820528, was the report immediately preceding his demotion. The plaintiff argues that this report contained factual misstatements, but the plaintiff fails to identify the misstatements or to produce any evidence whatsoever that indicate the report was in error. The Reviewing Officer, having read the plaintiff's rebuttal, concurred with the conclusions of the fitness report.

The PERB also reviewed the plaintiff's rebuttal to this fitness report and found no evidence that justified dismissing the appraisals of the Reporting Senior and Reviewing Officer. The BCNR reviewed and adopted the PERB's findings. Absent clear and convincing evidence that the report is in error, the court must affirm the BCNR's decision. *Cooper*, 203 Ct.Cl. at 304. The Competency Review Board that ordered the plaintiff's demotion had substantial evidence presented to it, even in the absence of the two late fitness reports, to conclude that the plaintiff should be reduced in grade to Staff Sergeant. This court will not upset that finding.

### CONCLUSION

For the reasons stated above, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment. The Clerk will dismiss the complaint. Each party will bear its own costs.

---

4. Fitness reports 810506–810913, 810914–811023, and 820203–820528, all more recent than the two challenged fitness reports, are also adverse reports. Among plaintiff's more recent fitness reports, fitness report 811024–811204,

covering the six-week period prior to plaintiff's enrollment in Recruiters School, was plaintiff's only non-adverse fitness report of the six fitness reports the plaintiff received since August 1980.