Denis E. DEHNE

v.

The UNITED STATES.

No. 730–86C.

United States Claims Court.

July 3, 1991.

John C. Morrison, Alexandria, Va., attorney of record, for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Major Alice Kottmeyer and Captain Douglas Wade, Dept. of the Air Force, of counsel.

## OPINION

HARKINS, Senior Judge:

Denis E. Dehne, plaintiff, graduated from the Air Force Academy on June 5, 1962. He was appointed second lieutenant in the regular Air Force on June 6, 1962, granted the rating of "pilot" on September 11, 1963, and during service on active duty, he was progressively promoted to the tem-

porary grade of captain. On September 10, 1967, he was discharged from all appointments, and on September 11, 1967, he was appointed a captain in the Reserve of the Air Force. On December 9, 1967, he was appointed a captain in the Air National Guard in the State of Nevada (NVANG). On December 22, 1967, orders were published extending Federal recognition to plaintiff, effective December 9, 1967. While serving in the NVANG, plaintiff was granted the rating of "senior pilot" on March 23, 1972, and was promoted to the Reserve grade of major effective September 11, 1974.

Selection boards, convened June 2, 1980, and June 7, 1981, considered but did not select plaintiff for promotion to the grade of lieutenant colonel. Plaintiff's active status as an officer in ANGUS and as a Reserve of the Air Force was terminated December 10, 1982. He was transferred to the Nonaffiliated Reserve Section (NARS), effective December 11, 1982. He was assigned to the Retired Reserve Section, effective March 10, 1983, credited with 20 years, 9 months and 4 days satisfactory Federal service.

Starting in November 1980, plaintiff began a succession of appeals to the Air Force Board for the Correction of Military Records (AFBCMR) in which he sought to void certain Officer Effectiveness Reports (OERs), to obtain correction of his military records to show promotions, reinstatement as a pilot, and to obtain reimbursement for lost pay. The AFBCMR acted on these appeals in decisions made on November 24, 1982, on February 18, 1987, and on May 9, 1988. The record of proceedings on the AFBCMR's November 24, 1982, decision was issued February 11, 1983; the record of proceedings on the February 18, 1987, decision was issued August 20, 1987, and for the May 9, 1988, decision, the record of proceedings was issued April 11, 1989.

During the course of his appeals to the Board, plaintiff, on November 19, 1986, filed a complaint in this court to toll the statute of limitations, and moved for suspension pending completion of the administrative proceedings. Proceedings on the complaint were suspended from January 5, 1987, to June 21, 1989. On July 20, 1989, plaintiff filed an amended complaint.

Initially, the AFBCMR, on February 11, 1983, denied plaintiff's appeal. Plaintiff persisted and submitted supplemental evidence. On reconsideration, the AFBCMR on August 20, 1987, provided substantial relief. As a result of plaintiff's efforts for correction of errors and removal of injustices, the Board has: declared void seven OERs and one certificate of Air Crew Qualification (AF Form 8) and ordered their removal from his records; declared void orders that transferred plaintiff to NARS; corrected the records to show that plaintiff was considered and selected for promotion to lieutenant colonel, with a promotion service date and effective date of September 11, 1981, and to show that on December 12, 1982, orders were issued by competent authority assigning plaintiff to the ARPC/RRPS, Category H; corrected plaintiff's records to add membership points, and inactive duty points so that plaintiff has satisfactory Federal service for retirement for the 5–year period September 11, 1982, through September 10, 1987, and recommended that plaintiff's records as corrected be presented to a Flying Evaluation Board (FEB).

Pursuant to those corrections, defendant has offered plaintiff back pay for the difference between grades of major and lieutenant colonel totalling $1,265.47 for the period September 12, 1981, to December 5, 1982. Plaintiff refused to accept the settlement offer on the ground that the pay and allowances due had been calculated improperly.

In its consideration of plaintiff's appeals, the Board adhered to its finding that plaintiff's evidence was insufficient to establish that evaluations of less than satisfactory on six flight checks were erroneous, and has denied plaintiff's requests to remove the related AF Forms 8 from his records. The Board also denied plaintiff's request for reinstatement to an active status in the Reserve, in ANGUS, or as a member of the NVANG and to duties as a RF–4 pilot. The Board reiterated its belief that placing

plaintiff in a position enabling him to seek an active assignment was adequate relief, and it would not be appropriate to award plaintiff pay and allowances for services he actually did not perform. The Board further denied plaintiff's request that his records be corrected to show that he was promoted to the grade of colonel. The Board stated that plaintiff's assertion that if he had remained on active service he would have been promoted to colonel was speculative, particularly in view of the competition for the limited number of colonel vacancies. The Board noted that plaintiff never had performed duties in the rank of lieutenant colonel, and his promotion to that rank was fitting relief for the injustice he had suffered.

Pursuant to the Board's April 11, 1989, recommendation, plaintiff's military records, as corrected, were considered by a FEB on January 7, 1990. The transcript of the FEB's proceedings included findings that plaintiff:

—does not hold a current effective aeronautical rating of Command Pilot;

—is less than the current maximum age in grade for a lieutenant colonel;

—is medically qualified for aviation service;

—was qualified for aviation service at the time his aeronautical orders were invalidated;

—meets the desired minimum flying hours;

—has a mandatory retirement date of July 5, 1990;

—last flight in the RF4C was on August 31, 1978;

—civilian flying experience since relieved from NVANG duties included 550 hours in Cessna 150/172 and Lear jet to 1983, and is currently flying as second officer for Pan Am A–300, with several hundred hours in the past 3 years;

—does not have the required retainability to take part in the active duty for training required for requalification.

The FEB recommended: (1) plaintiff's aeronautical orders not be revalidated, and (2) plaintiff should not be requalified for aviation service.

Plaintiff's amended complaint, filed July 20, 1989, seeks: pay and allowances due an officer serving in the grade of lieutenant colonel from December 11, 1982, to the date of judgment; flight pay from the date of termination of flight status to the date of judgment; credit for additional active duty days of his unit; and compensation commensurate with the relief granted as a result of corrections made by the Board. In addition, the amended complaint seeks an order that directs the Air Force Secretary to correct plaintiff's records to show: (a) immediate promotion to rank of colonel and (b) retroactive restoration to active status in NVANG as an RF–4 pilot.

Plaintiff's claims now are before the court on cross-motions for summary judgment. During preparation of the cross-motions for summary judgment, plaintiff's claims have been narrowed to monetary claims asserted to result from the Board's award of points to reconstruct 5 years of satisfactory Federal service for retirement. As so refined, plaintiff claims pay at the equivalent rate of lieutenant colonel in the Permanent Reserves during the period September 11, 1981, through September 10, 1987, for 63 days per year, minimum training needed to maintain eligibility for satisfactory Federal service for retirement, and 48 days per year for the Additional Flying Training Periods (AFTPs) required to maintain flying proficiency in the ANG. As part of these so-called work day entitlements, plaintiff claims eligibility for Basic Allowance for Subsistence (BAS) and Basic Allowance for Quarters (BAQ). In addition, because there was no valid revocation in 1979 of plaintiff's aeronautical orders, and no competent orders ever established disqualification from flight status, plaintiff claims entitlement to incentive pay for flights for the period September 12, 1981, to December 5, 1982. Defendant concedes that plaintiff is entitled to the difference in pay between the grade of major and the grade of lieutenant colonel for the period September 12, 1981, to December 5, 1982.

Consideration of plaintiff's claims has been complicated by the condition of the administrative record delivered by the Air

Force. The administrative record was delivered piecemeal and initially was in such disorder as to be unusable. On January 31, 1990, defendant was ordered to file the administrative record relative to plaintiff's appeals and the decisions of the AFBCMR dated February 11, 1983, August 20, 1987, and April 11, 1989. An initial delivery, certified by the AFBCMR official custodian, was filed in two volumes on February 14, 1990. After plaintiff brought to the court's attention that the administrative record on file with the clerk contained substantial omissions, defendant on July 2, 1990, supplemented the record with 45 pages that had been omitted from the initial filing "due to administrative oversight." At oral argument on September 19, 1990, the exceptional deficiencies in the administrative record on file were described on the record. Particular emphasis was given to the inability to locate Exhibits A through MM, which were referenced as additional documentary materials considered by the Board in its 1983, 1987 and 1989 decisions. The September 19, 1990, order includes the following statement:

> During argument counsel were told that the administrative record was in a condition that was completely unsatisfactory: it was not organized in any discernible coherent fashion; it is not apparent that the administrative record as filed is complete; the pages bear two numbering systems, neither of which is explained when referred to in counsel's briefing materials.

The order directed defendant to file a statement that all documentary evidence referred to as considered by the Board in the Board's actions dated February 11, 1983, August 20, 1987, and April 11, 1989, in fact was included in the administrative record filed with the Clerk, and to cite the page numbers where the exhibits that contained such additional documentary evidence could be found.

On October 22, 1990, defendant filed the military master personnel file of Denis E. Dehne consisting of pages 1 through 184. On October 24, 1990, defendant acknowledged that exhibits G, DD and EE referred to in the Board's February 11, 1983, and

August 20, 1987, decisions had not been filed with the court, and filed an additional 203 pages.

Even as finally filed, there is no assurance that each of the Exhibits referenced in the Board's decisions is in the form originally considered, or that the record is complete. The certification only verifies that the papers filed with the court "are authentic copies." Although the location of the initial documents for Exhibits A through MM was identified by the AFBCMR in defendant's October 24, 1990, response, such initial document usually referenced "Enclosures" or "W/Atchs" and such enclosures or attachments were not described and their location was not designated. As a result, defendant has not delivered an administrative record that is usable to reconstruct, or even to divine, the specific items in the Exhibits considered by the Board in reaching its decisions.

## DISPOSITION

### Jurisdiction

■ Throughout this proceeding, defendant has sought a dismissal for lack of jurisdiction. Dismissal of a military pay claim on the basis of the pleadings precludes consideration of supporting evidence on substantive merits. The procedure is drastic and should be used only when clearly appropriate. *See Mindes v. Seaman,* 453 F.2d 197, 198 (5th Cir.1971) (citing C. Wright, Law of Federal Courts 62 (2d ed. 1970)). Defendant's motions to dismiss do not recognize the distinction between a lack of subject matter jurisdiction (RUSCC 12(b)(1)) and jurisdictional limitations on the exercise of the court's power to afford relief as to a particular claim (RUSCC 12(b)(4)). *See Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986).

■ Defendant asserts plaintiff, as a member of NVANG, was a state employee, not a Federal employee, and thus ineligible to maintain an action under the Tucker Act, citing *Christoffersen v. United States,* 230 Ct.Cl. 998 (1982), and *Gnagy v. United States,* 225 Ct.Cl. 242, 634 F.2d 574 (1980). These cases which were before the court on

summary judgment, involved plaintiffs whose claims were based on the loss of employment as civilian technicians (which positions were predicated on status in the NG), and involuntary retirement from the state national guard. Neither case involved action by a correction board. In this case, in contrast, plaintiff seeks judicial review of a corrections board decision that allegedly did not provide the full relief required by applicable Air Force procedures. The fact that the AFBCMR entertained plaintiff's appeals and issued decisions in itself refutes defendant's claim that plaintiff is not a Federal employee. It also vests this court with subject matter jurisdiction. *Mitchell v. United States*, 930 F.2d 893, 896 (Fed.Cir.1991). "The fact that this court has jurisdiction to review actions of military correction boards is not disputable." *Armstrong v. United States*, 205 Ct.Cl. 754, 761 (1974) (citing *Hertzog v. United States*, 167 Ct.Cl. 377, 383–84 (1964)).

■ The basic jurisdictional statute of this court, the Tucker Act, effects a waiver of sovereign immunity for the classes of claims against the United States described therein. *Army & Air Force Exchange Service v. Sheehan*, 456 U.S. 728, 734, 102 S.Ct. 2118, 2122, 72 L.Ed.2d 520 (1982). These are any claims against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). The Tucker Act, however, does not create any substantive right enforceable against the United States for money damages. The substantive right must be found in some other source of substantive law, and such source must be capable of interpretation as mandating compensation by the Federal government for the damage sustained. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Eastport SS Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007–09 (1967).

■ For claims against the United States such as plaintiff's the court must inquire whether the source of substantive law can fairly be interpreted as mandating Federal compensation for damages. In this inquiry, the court need not find a separate waiver of sovereign immunity in the substantive provision. The Tucker Act itself provides the necessary consent. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983).

■ Where the substantive provision is money mandating, the subsequent inquiry is whether the complaint states a claim upon which relief can be granted. It is sufficient to invoke the court's jurisdiction if the complaint asserts the claim arises under or is "founded" on a Federal statute or regulation that mandates compensation, and the claim is not frivolous or a mere matter of form. *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, 667 (Ct.Cl.), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); *Eastport SS Corp. v. United States*, 372 F.2d at 1008; *Mindes v. Seaman*, 453 F.2d at 198.

■ In a motion to dismiss under RUSCC 12(b)(4), material allegations of fact alleged in the complaint are taken as true, and are considered in a light most favorable to plaintiff. The issue is not whether plaintiff will prevail; it is whether plaintiff is entitled to offer evidence to support the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Aleut Community of St. Paul Island v. United States*, 202 Ct.Cl. 182, 480 F.2d 831, 833 (1973). Plaintiff's amended complaint asserts a claim of a Federal employee entitled to compensation under a pay mandating statute. This Federal claim is not frivolous. Accordingly, plaintiff's amended complaint, relative to a dismissal on the pleadings, states a claim upon which relief can be granted.

"Air National Guard" is a defined term that means that part of the organized militia of the several States that (A) is an air force; (B) is trained and has its officers appointed under Art. I, Sect. 8 of the Constitution; (C) is organized, armed and

equipped wholly or partly at federal expense; and (D) is federally recognized. 10 U.S.C. § 101(12) (1988). "Air National Guard of the United States" (ANGUS) is a defined term that means the reserve component of the Air Force, all of whose members are members of the Air National Guard. 10 U.S.C. § 101(13). ANGUS is a distinct federal military organization. It is listed as a reserve component of the armed forces. 10 U.S.C. § 261(a)(5).

"Federal recognition" means acknowledgment by the Federal government that officers appointed by a state to its NG unit meet the same standards as officers on Federal active duty. *See* 32 U.S.C. §§ 305, 307; ANGR 36–02, ¶ 1–i. Federal recognition results in an appointment to ANGUS. Withdrawal of Federal recognition results in appointment to the Air Force Reserve. The applicable statutes, 10 U.S.C. §§ 8351(a) and 8352(b), provide:

§ 8351. Officers: Air National Guard of United States

(a) Upon being federally recognized, an officer of the Air National Guard shall be appointed as a Reserve for service as a member of the Air National Guard of the United States in the grade that he holds in the Air National Guard. However, an officer of the Air Force Reserve who is federally recognized as an officer of the Air National Guard becomes an officer of the Air National Guard of the United States and ceases to be an officer of the Air Force Reserve. The acceptance of an appointment as a Reserve for services as a member of the Air National Guard of the United States by an officer of the Air National Guard does not vacate his office in the Air National Guard.

§ 8352. Officers; Air Force Reserve: transfer from Air National Guard of the United States

(b) Unless discharged from his appointment as a Reserve, an officer of the Air National Guard of the United States whose Federal recognition as a member of the Air National Guard is withdrawn becomes a member of the Air Force Reserve. An officer who so becomes a member of the Air Force Reserve ceases

to be a member of the Air National Guard of the United States.

■ Plaintiff, accordingly, until his release on December 10, 1982, served in a dual capacity: as a member of the NVANG and also as a member of ANGUS. *Penagaricano v. Llenza*, 747 F.2d 55, 56 (1st Cir.1984); *Perpich v. United States Dep't of Defense*, 666 F.Supp. 1319, 1323 (D.Minn.1987), *aff'd*, 880 F.2d 11 (8th Cir. 1989), *aff'd*, —— U.S. ——, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). Under the dual enlistment rationale, the states' authority over training the militia, found in the Militia Clause (Constitution Art. I, § 8 cl. 16), does not apply to the period during which national guard members are on active duty as part of the National Guard of the United States. *Dukakis v. United States Dep't of Defense*, 686 F.Supp. 30, 36 (D.Mass.), *aff'd*, 859 F.2d 1066 (1st Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 181 (1989).

■ Because ANGUS is a component of the Air Force Reserve, the AFBCMR was authorized to provide relief for plaintiff's nonselection for promotion and termination of his status in ANGUS. 10 U.S.C. § 1552; AFR 35–7, Attachment 4 (Sept. 1981). The AFBCMR has no power to force the state to reinstate plaintiff in NVANG. It can, however, correct plaintiff's federal records.

If the AFBCMR determines that an officer's nonretention in the Air National Guard was the consequence of error or injustice, the Board can correct the officer's *federal* records to show that his federal recognition has not been withdrawn and that he remains a member in good standing of the ANGUS. While the Board cannot direct his reinstatement in the National Guard of the state, it can reinstate him in a comparable active federal reserve status, restore his pay and order compensatory back pay. *Penagaricano v. Llenza*, 747 F.2d at 57.

The pay mandating statute for members of the Air National Guard is 37 U.S.C. § 206(a). In relevant part Section 206(a) provides:

(a) Under regulations prescribed by the Secretary concerned, and to the extent provided for by appropriations, a member of the National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, is entitled to compensation, at the rate of ⅟₃₀ of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay—

(1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday,

(2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe....

█ In addition to authority to correct military records when necessary to correct an error or remove an injustice, the AFBCMR is authorized to make payments which become due as a result of the record corrections. The statute, 10 U.S.C. § 1552(c) provides:

(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be....

The Secretary of Air Force is authorized to offer a settlement on the basis of the record corrections. Computations of amounts due are to be made by the Comptroller of the Air Force, HQ USAF, according to applicable law and regulations. 32 C.F.R. § 865.25. The payment offered is the amount that would have been due if the error or injustice had not existed originally. The Secretary is not vested with discretion to determine the specific amounts to be paid; the amounts to be paid depend solely on a proper application of the statutes and regulations to the facts as shown by the corrected record. 34 Comp.Gen. 7, 11, B–117367, July 7, 1954. Once a discretionary decision is made to correct a record, the grant of appropriate monetary relief is not discretionary but automatic. *Denton v. United States,* 204 Ct.Cl. 188, 195 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975).

From the foregoing, it is clear that the amended complaint sets forth a claim within the subject matter jurisdiction of this court. It also is clear that the amended complaint relative to a dismissal on the pleadings states a claim on which relief can be granted. The next step, accordingly, is to determine whether plaintiff's claims on the merits are compensable under the statutes and applicable regulations.

When defendant has a valid defense, and there are no material facts in dispute, defendant may move for summary judgment or for dismissal for failure to state a claim on which relief can be granted. Under the rules, if matters outside the pleadings are presented and not excluded by the court, the motion for failure to state a proper cause of action is treated as one for summary judgment and disposed of under RUSCC 56. The September 19, 1990, order noted that defendant's motion papers included materials outside the pleadings and stated defendant's motion was to be treated as one for summary judgment.

*Summary Judgment*

█ Summary judgment is to be rendered forthwith if the pleadings and other information in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. RUSCC 56(c). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The summary judgment procedure serves judicial economy, it saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Use-

less" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed. Cir.1984); *United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 1011 (C.C.P.A.1968). A material fact is one which will make a difference in the result of a case. *See Curtis v. United States*, 144 Ct.Cl. 194, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). The substantive law identifies the facts that are material. The judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In this case, both parties have moved for summary judgment, neither has identified any factual issue that would require a trial, and all relevant facts have been developed by the AFBCMR. There is no genuine issue as to any material fact. Disposition of plaintiff's claims and defendant's defenses by summary judgment procedures is appropriate.

 This court does not require exhaustion of administrative remedies prior to judicial review of claims for military pay. *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed.Cir.1983); *Kirby v. United States*, 201 Ct.Cl. 527 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). Once a plaintiff has sought relief from a correction board, however, the board's decision is final and conclusive "unless he can meet the difficult standard of proof that the correction board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979); *Skinner v. United States*, 219 Ct.Cl. 322,

594 F.2d 824, 830 (1979); *Heisig v. United States*, 719 F.2d at 1156.

 In application of this standard of review, the court may examine and act upon a board's failure to comply with procedures established by regulation. Procedural regularity of the board's decision is fully reviewable by the Claims Court. *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988). The Claims Court, however, may not review the Board's exercise of discretion when it has Tucker Act jurisdiction by virtue of the mandatory monetary feature of the applicable statute. The Secretary's decision, when wholly discretionary, is not "justiciable." *Id.* at 780. The court's limited standard of review is reflected in the long-standing view that "[r]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province.... [C]ourts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d at 1156.

 Plaintiff contends the AFBCMR's decision to refuse back pay, even though it corrected his records to show uninterrupted satisfactory Federal service for retirement from September 11, 1982, to September 10, 1987, was contrary to regulation and constitutes legal error. Plaintiff relies upon cases which hold that once a correction board in the exercise of its discretion orders corrections to be made in the service member's records, it must implement the full measure of relief which flows from the corrective measure. *Sanders v. United States*, 594 F.2d at 813. The award of back pay, under such conditions, is not discretionary.

Plaintiff cites as authority: Where there is legal error in correction board proceedings, the court can grant back pay and relief under the Tucker Act. *Skinner v. United States*, 594 F.2d 824. Once a discretionary decision has been made to correct a record, the grant of appropriate monetary relief is not discretionary but automatic. *Denton v. United States*, 204 Ct.Cl. at 195. Once a correction board makes

record corrections pursuant to 10 U.S.C. § 1551, it cannot refuse to grant monetary relief which flows as a natural consequence of its corrective action. *Duhon v. United States,* 198 Ct.Cl. 564, 461 F.2d 1278 (Ct.Cl. 1972); *Sanders v. United States,* 594 F.2d 804; *Engels v. United States,* 230 Ct.Cl. 465, 678 F.2d 173 (1982).

In this case, the Board determined that the only way to afford plaintiff proper and fitting relief and to resolve the injustice of nonselection for promotion was to correct the record to show that he was selected for promotion by the fiscal year 1981 selection board. In addition to correcting the record to show a promotion, as further relief, the AFBCMR concluded: "Had applicant been selected for promotion, his retirement, which was mandated by law as a result of his second nonselection, would not have occurred. Accordingly, the actions to effect his retirement should be set aside. Furthermore, as an extension of the relief afforded applicant by our findings, he should be awarded the requisite points to attain satisfactory years of Federal service from the time of his involuntary retirement until the present." Points were awarded to cover a 5-year period. (Paragraphs g, h, i, j and k of the August 20, 1987, decision.)

For the first year, the AFBCMR provided credit for the computation of years of satisfactory federal service for retirement in the following manner:

> g. In the retirement/retention year 11 September 1982 to 10 September 1983, add to the points earned 4 inactive duty *nonpaid* points and 8 membership points resulting in 50 total points comprised of 15 active duty points, 20 inactive duty points, 0 ECI points and 15 membership points; and, that the period 11 September 1982 to 10 September 1983 is a year of satisfactory Federal service for retirement. (Emphasis added.)

The computation for the 1983–84 year, and for each succeeding year to September 10, 1987, *mutatis mutandis,* was as follows:

> h. In the retirement/retention year 11 September 1983 to 10 September 1984, he accrued 50 points comprised of 35 inactive duty *nonpaid* points and 15

membership points, and, that the period 11 September 1983 to 10 September 1984 is a year of satisfactory Federal service for retirement. (Emphasis added.)

During oral argument on September 19, 1990, it became apparent that neither party had included in their briefs the legal basis that would support their respective contentions as to plaintiff's entitlement to compensation pursuant to 10 U.S.C. § 1552(c) and 37 U.S.C. § 206 which resulted from the corrections the Board made. Accordingly an order was entered to direct plaintiff to file a brief that "sets forth in detail the statutes and regulations that plaintiff contends require payment as a result of corrections to plaintiff's military records." In the order, defendant was directed to file a brief that "sets forth in detail the statutes and regulations that support its defense that no additional payment (in addition to the $1,265.47 entitlement) is authorized as a result of the corrections to plaintiff's military records."

Plaintiff's supplemental brief traces the Board's authority to award reserve participation credit in a computation of years of satisfactory service for retirement, and analyzes the award of "points" to reserve personnel for inactive training duty. Plaintiff contends that Air Force regulations and procedures do not authorize the board to award "nonpaid" points when an award is made for constructive service. Plaintiff traces the convoluted path through the arcane labyrinth of procedures that the Department of Defense and the Air Force have established to deal with the authority of correction boards, the determination of eligibility for, and the computation of, pay and allowances of members of Air Force Reserve units. The DOD and AF procedures referenced by plaintiff do not comply with the rule making requirements of the APA. 5 U.S.C. § 706. They are internal interpretive guidelines and are binding on agency officials. Plaintiff's exercise involved detailed analysis of the following interrelated statutes and regulations:

> A. 10 U.S.C. § 1552(a) (Correction of Military Records)

Air Force Regulation (AFR) 31–3 (AFBCMR)

Section E (Action by the Board)

¶ 18 (Deliberations, Findings, Decisions, and Recommendations)

(e) (Delegation of Authority)

(*l*) (Provisos)

(c) (Categories)

9, 15, 17, 21, 23, 30

B. 37 U.S.C. § 206(a) (Pay and Allowances; Reserves, Members of National Guard, Inactive Duty Training)

10 U.S.C. § 8366 (Commissioned Officers, Promotion to Captain, Major, or Lieutenant Colonel)

DOD Military Pay and Allowance Entitlements Manual (DOD Entitlements Manual or DODPM)

Part Two (Incentive Pay)

¶ 20101 (Entitlement)

¶ 20103 (Flight Requirements)

¶ 20104 (Determination of 3–Calendar–Month Period)

¶ 20130 (Disqualification for Aviation Service; Suspension of Aviation Service)

Part Eight (Pay and Allowances for Members of the Reserve Components (Not on Extended Active Duty) and ROTC)

Chapter 2 (Active Duty (Not Extended Active Duty) Entitlements)

¶ 80201(d) (National Guard (NG) Officers Granted Temporary Federal Recognition)

¶ 80201(e) (Effective Date for Promotion for Increase in Pay and Allowances)

Chapter 3 (Pay and Allowances for Inactive Duty Training)

¶ 80312 (ACIP (continuous or conditional) or HDIP)

C. 10 U.S.C. § 1331(a)(2) (Retired Pay for Non Regular Service; Age and Service Requirements)

10 U.S.C. § 1332(a)(2) (Computation of Years of Service in Determining Entitlement to Retired Pay)

10 U.S.C. § 1333 (Computation of Years of Service in Computing Retired Pay)

AFR 35–7 (Service Retirements)

Chapter 9 (Retired Pay for Non Regular Service at 60 years of Age)

¶ 9–1 (Age and Service Requirements)

¶ 9–4 (Service after 30 June 1949)

¶ 9–5 (Noncreditable Service)

Attachment 1 (Terms Explained)

¶ A1–12 (Inactive Duty Training)

¶ A1–15 (Points)

¶ A1–18 (Reserve Components of the Air Force)

D. Air Force Manual (AFM) 177–373, Vol. III (Air Reserve Forces Pay and Allowance System (ARPAS))

Paragraph 1 (Purpose)

Chapter 8 (Inactive Duty)

¶ 8–1 (Entitlements)

¶ 8–6 (Inactive Duty Training Periods)

Chapter 13 (Basic Allowance for Subsistence (BAS))

Chapter 14 (Basic Allowance for Quarters (BAQ))

Chapter 20 (Special Pay—Inactive Pay for Hazardous Duty)

E. ANG Regulation (ANGR) 50–01 (Active and Inactive Duty for Training Management within the Air National Guard)

Chapter 2 (The Work Day Program)

¶ 2–2 (Categories of Work Days)

Chapter 3 (Active Duty for Training—Annual Training)

¶ 3–1 (General)

¶ 3–7 (Exceeding 15 days)

Chapter 5 (Inactive Duty for Training—Unit Training Assemblies)

¶ 5–3 (Unit Training Assemblies (UTA))

¶ 5–9, b(1) (Additional Flying Training Periods—Annual/Quarterly Authorizations)

The thread of plaintiff's analysis traces through the authority delegated to the AFBCMR in AFR 31–3, paragraph 18e, to take final action on behalf of the Secretary in approving the correction of military records, provided such action has been recommended by the Air Staff and is unanimously agreed to by the Board. Plaintiff

notes the magnitude, of the relief authorized by the Board in recognition of the injustices that had been established in the record, including: promotion to grade of lieutenant colonel, voidance of retirement orders transferring him to the retired reserve, and the granting of sufficient points to qualify for an additional 5 years of satisfactory Federal service for retirement, from September 1982 to September 1987. In plaintiff's analysis, record corrections of this magnitude, under the applicable procedures, established a nondiscretionary entitlement to pay and allowances:

—Promotion to the permanent reserve grade of lieutenant colonel meets the requirements for entitlements to pay and allowances beginning September 11, 1981. DOD Entitlements Manual, ¶ 80201.d. and ¶ 80201.3.

—To be eligible for retired pay the member must meet certain eligibility criteria. For service after June 30, 1949, a year of service creditable for federal retirement entitlement is one in which the member has been credited at least 50 points. Included are: b. Points for each type of inactive duty training or activity, and c. Points at the rate of 15 a year for membership in a Reserve component of an armed force, in the Army or the Air Force without component, or in any other category covered by paragraph 9–3, except a Regular component. 10 U.S.C. § 1332(a)(2), AFR 35–7, ¶ 9–4.

—"Points" is defined as follows:

**Points.** Credits awarded to Reserve personnel for active federal service or inactive duty training and gratuitous credits for Reserve membership. AFR 35–7, Attachment 1, A1–15

—"Inactive duty training" is defined as follows:

**Inactive Duty Training.** Authorized training performed by a member of a Reserve component not on active duty or active duty for training. Training consists of regularly scheduled unit training assemblies, additional training assemblies, periods of appropriate duty or equivalent training and any special additional duties authorized for Reserve component personnel by an authority designated by the Secretary concerned, and performed by them in connection with the prescribed activities of the organization in which they are assigned. AFR–35–7, Attachment 1, A1–12

—The AFBCMR established constructive reserve participation by the use of inactive duty points in its computation of years of "satisfactory Federal service for retirement." The only points that can be awarded for inactive duty training credit are points for which payment is required. AFR 35–7, ¶ 9–3, ¶ 9–4; AFM 177–373, Vol. III, ¶ 8–1; ANGR 50–01, ¶ 3–1, ¶ 5–2.

—Accordingly, it was legal error for the AFBCMR to insert the word "nonpaid" between the words "inactive duty" and "points."

The crux of plaintiff's analysis is that the definitions in AFR 35–7, Attachment 1, of "points" and "inactive duty training" preclude the use of nonpaid points in an award of constructive credit for years of satisfactory Federal service for retirement. No provision of AFR 35–7 for service after June 30, 1949, permits an award of points for other than a paid status, *e.g.*, either active duty or inactive duty for training.

Plaintiff's records were corrected to void the March 1, 1983, order relating to his transfer to the Retired Reserve Section (ZA), and to show that orders were issued on December 12, 1982, assigning him to the ARPC/RRPS, Category H. In order to calculate the value of paid points for the constructive credit for the years of satisfactory Federal service for retirement during which he was so assigned, plaintiff used the ANG regulations applicable to inactive duty training.

AFM 177–373, Vol. III, ¶ 8–1, references ANGR 50–01 for entitlement to basic and incentive pay for inactive duty for members of the Air National Guard. ANGR 50–01 sets forth the minimum training criteria required within the National Guard for a member to remain eligible for creditable Federal service for retirement. The minimum eligibility criteria for National

Guard creditable federal retirement requires each member to have 15 days Annual Training (AT) and 48 Unit Training Assemblies (UTA or drill days). ANGR 50–1, ¶ 3–1, and ¶ 5–3. Plaintiff used the minimum training requirement of 63 paid work days for each fiscal year as a measure of the requirement for 35 inactive duty points that were needed to permit an award of a year of satisfactory Federal service for retirement.

Plaintiff also would add 48 additional work days in each fiscal year for Additional Flying Training Periods (AFTP) required to maintain ANG flight proficiency. ANGR 50–01, ¶ 5–9(b)(1). Inasmuch as there never was a suspension of plaintiff's flight status by "competent orders," plaintiff contends he also is entitled incentive pay for flights (ACIF). AFM 177–373, Vol. III, § 30–1(a); DOD Entitlements Manual, Part Eight, ¶ 80312 and Part Two, ¶ 20101, ¶ 20103, ¶ 20104, ¶ 20130.

Plaintiff's claim for AFTP work day entitlements is not based on any requirement that equates to points that are essential to a computation of a year of satisfactory Federal service for retirement. Accordingly, it cannot be said to be required for the constructive service. Plaintiff is not entitled to ACIF because (1) there is no date on which he was again qualified for aviation service (continuous ACIP), and (2) he cannot meet the minimum monthly flight requirements or the flight requirements for a Three Calendar Month Period. DOD Entitlements Manual, Part Two, ¶ 20130.d.

Defendant's response to the September 19, 1990, order did not include a supplemental brief that set forth in detail the statutes and regulations that support its defense that no additional payment is authorized as a result of the record corrections made by the Board. At the argument on September 19, 1990, defendant's counsel was asked to explain the meaning, in paragraphs g, h, i, j and k of the Board's August 20, 1987, decision, of "inactive duty" points, "membership" points, "ECI" points, and the status that resulted from a finding of "satisfactory Federal service for retirement." His response was "Unless you are an expert, you won't have any idea what all that means without looking at the Air Force regulations." Notwithstanding this acknowledgment, the attorneys representing the Departments of Justice and Air Force did not present an analysis of the statutes and regulations that might support the Board's award of constructive credit for 5 years of "satisfactory Federal service for retirement" through accrual of "nonpaid" inactive duty points.

Defendant's three page response dealt with the status of the administrative record, and AF forms showing calculations of the differential in pay between that computed upon the basis of the pay grade of major and the pay grade of lieutenant colonel. The response appended declarations of an Examiner for the AFBCMR and a Branch Chief at the Air Force Accounting and Finance Center (AFAFC).

The AFAFC Forms 0–110 (Corrected Records Computation) covered the period September 12, 1981, to December 5, 1982. The forms show the total amount due plaintiff as $1,184.60, less deductions of $312.74, and a net amount due plaintiff as $871.86. There was no explanation for the differences from the AFAFC Form 67 sent to plaintiff on November 12, 1987, which showed a total entitlement of $1,265.47, total deductions of $387.95, and a net amount of $877.52. The check plaintiff refused to accept was for $877.52. On January 19, 1988, AFAFC reviewed plaintiff's account, determined the amount was correct and reoffered the check to plaintiff.

Defendant's November 5, 1990, reply to plaintiff's supplemental brief did not answer directly plaintiff's analysis of the statutes and regulations and it did not include an analysis of the law in support of defendant's position. Defendant did disagree that the Board had authority to grant the additional pay claimed, on the ground that AFR 31–3, in ¶ 18(e)(1)(a) delegates authority to the Board subject to the proviso that the Board's action "has been recommended by the Air Staff." Since the Air Staff made no recommendation to grant the relief requested by plaintiff, defendant argues, the Board did not

have authority to make such an award. This argument lacks merit. Wholly apart from the questionable retention of control by the Air Staff over actions of the AFBCMR, which is by statute a board of civilians, it is sufficient to note that defendant does not cite any document that contains a statement from the Air Staff that recommended the action the Board did take, *i.e.*, that the Board should award "nonpaid" points for inactive duty to establish a constructive year of satisfactory Federal service for retirement.

■ Defendant's reply recognizes that plaintiff meets the requirements for federal recognition pursuant to 37 U.S.C. § 206, and that there is no controversy as to the entitlement issue. From this concession, defendant argues that, notwithstanding plaintiff's refusal of the money tendered, no controversy exists and the pay claim should be dismissed. This argument is specious. A continuous controversy is spelled out in the record. Defendant has never offered the amount plaintiff claims the applicable regulations require, and plaintiff throughout has challenged the Board's errors.

Defendant's reply reasserts the contention that the court lacks jurisdiction because the Board's decision to grant partial relief, *i.e.*, constructive credit for satisfactory Federal service for retirement with no pay and allowances, was discretionary. As evidence of this discretion, defendant cites: the term "may" rather than "shall" in 10 U.S.C. § 1552(c); *Denton v. United States*, 204 Ct.Cl. at 195; and *Banks v. Garrett*, 901 F.2d 1084 (Fed.Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990).

Discretion of correction boards under Section 1552(c) to award pay has long been recognized. *Sanders v. United States*, 594 F.2d at 811. The scope of this discretion in back pay awards also has long been delineated. *Friedman v. United States*, 141 Ct. Cl. 239, 158 F.Supp. 364, 374–77 (1958); *cf. Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). In *Denton*, the court noted that once the

board makes a discretionary decision to correct a record, the grant of appropriate relief is not discretionary, but automatic, but where appropriate payment has been made, plaintiff may not seek a new discretionary correction on grounds that could have been, but were not, presented to an earlier board. In *Banks v. Garrett*, plaintiff could not obtain pay for inactive duty training under 37 U.S.C. § 206(a) because during the relevant time period he was assigned to a voluntary training unit in a nonpay status and the record correction did not change that status. *Banks v. Garrett*, 901 F.2d at 1087.

In the circumstances of this case, the Board's decision to withhold pay after making corrections in plaintiff's records that both parties agree were proper, was not within the scope of its discretionary powers. Under the regulatory scheme, the Board's refusal to order payment of the amounts due on account of these proper corrections was legal error. It is clear that the Board could have ordered under Section 1552(c) the pay that plaintiff claims. The court, of course, could not direct the Board to exercise its discretion and make the corrections it made to establish 5 years of constructive satisfactory Federal service for retirement. Once the corrections were made, however, the court has an obligation to direct payment of the full amount due. *Voge v. United States*, 844 F.2d at 776; *Cruz–Casado v. United States*, 213 Ct.Cl. 498, 553 F.2d 672, 673 (1977); *Bray v. United States*, 515 F.2d 1383, 1384; *Engels v. United States*, 678 F.2d at 175.

■ Defendant cites *Ayala v. United States*, 16 Cl.Ct. 1 (1988), for the proposition that a reserve officer not on continuous active duty has no claim cognizable under the Tucker Act for training duties not actually performed. This case is not comparable on its facts to Ayala. There, Ayala was seeking a promotion and pay at the promoted rate. Back pay, based on a failure to promote, may not be made. The BCNR had corrected Ayala's records so as to void a transfer to the IRR, to show constructive service in the SCMR, a pay status, and awarded points for such ser-

vice. Subsequently, the BCMR directed further corrections "to reflect attendance at a sufficient number of drills to earn the 50 points required for retirement so as to authorize the expenditure of funds to reflect such attendance." *Ayala v. United States,* 16 Cl.Ct. at 3. The BCNR, when faced with the issue of back pay in a period of constructive status, resolved the issue properly. The 63 constructive work days per year for which plaintiff claims pay and allowances are comparable to the pay for constructive service given in *Ayala.*

 Defendant argues that the Board's interpretation of the regulations is entitled to special deference. In the absence of strong evidence to the contrary, military administrators are presumed to act correctly, lawfully and in good faith in carrying out their official duties. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Sanders v. United States,* 594 F.2d at 811. In this case, however, the presumption of regularity is undercut by the numerous deficiencies in the administrative record as filed with the Clerk. Further, although the Board's decision explains thoroughly the errors and injustices that it ordered to be corrected, the decision is silent as to why it determined to award nonpaid points for inactive duty, and the regulatory basis for such action. Moreover, the reasons for the decision have not been articulated on the record made in this case. Defendant's attorneys have not come forth with an explanation of the statutes and regulations that support its defense that no further payment is authorized. In this case, the Board's decisions document numerous errors that needed to be corrected. Plaintiff has defined a regulatory structure, which, if unrefuted, establishes legal error in the Board's denial of pay during the period of constructive service for retirement. Defendant bears the burden to go forward to establish its defense. *Engels v. United States,* 678 F.2d at 175; *Sanders v. United States,* 594 F.2d at 816.

*Conclusion*

On the basis of the foregoing, defendant's motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is ALLOWED–IN–PART. In addition to the $1,265.47 entitlement defendant offered on November 12, 1987, plaintiff is entitled to basic pay for 63 days for each year during the period September 11, 1982, through September 10, 1987. This is compensation for the minimum number of inactive duty for training days that are required to maintain a year of satisfactory Federal service for retirement. The amount is to include basic pay (BP) and BAS only. BAQ, AFTP, and ACIF are not included in the amount to be paid.

Defendant is directed to calculate the amount to be paid to plaintiff pursuant to this decision, and to deliver to plaintiff 30 days from the date of this opinion an AFAFC Form 0–110 that sets forth the calculation of the amount to be paid.

On the filing of a stipulation of an amount to be paid to plaintiff pursuant to this opinion, the Clerk is authorized to enter a judgment in the amount so stipulated without further order of the court. Costs to plaintiff.